## Thomas F. Buchannon, Jr., and Rita Buchannon* v. Roger Billings

[ 238 A.2d 638 ]

December Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 6, 1968

* Note: Notwithstanding the title of this case, it appears that the correct spelling of the surname of the plaintiffs is Buchanan, and not Buchannon.

*Robert A. Magoon* for the plaintiffs.

*Davis, Martin & Free* for the defendant.

**Shangraw, J.** This law action, as well as *Norris E. Mercia* v. *Roger Billings,* 238 A.2d 636, were each returnable before the Lamoille County Court. In the Buchanan suit plaintiffs sought to recover damages for an alleged breach of an option agreement for the sale of certain property owned by the defendant. In the Norris suit, the plaintiff as a real estate agent sought to recover his commission for having found the Buchanans as buyers for property owned by defendant Billings.

In seeking a reformation of the option agreement to conform to the intention of the parties, the defendant in each case filed a motion that the cause be amended into an action in Chancery. The two cases were transferred to equity, and by stipulation of counsel were consolidated for the purposes of trial. The cases were heard on plaintiff's specifications filed in each cause which were treated as bills of complaint, and on the defendant's answers thereto.

One set of findings of fact were filed covering both cases. This was followed by one decretal order, (1) directing that the defendant, Billings, pay to plaintiffs, Thomas F. Buchanan, Jr. and Rita Buchanan, the sum of $489.50, and (2) that defendant Billings pay to plaintiff, Norris E. Mercia the sum of $1,000.00. The order also provided for the payment of interest on the foregoing sums from July 1, 1963 to September 1, 1966 at six percent, together with taxable costs. It is from this decretal order that the defendant has taken this appeal.

On appeal before this Court the two cases were consolidated for argument and so briefed. The only two issues briefed by the defendant are, as stated by him, as follows:

"1.  No damages are recoverable by the plaintiffs Buchannon because they failed to comply with all of the terms of the option agreement.

2.  Since this option agreement never obtained the status of a contract for the sale and purchase of land for the reasons above stated, plaintiff Mercia is not entitled to a commission."

The findings of the Chancellor reveal the following facts. Prior to April 1, 1963 the defendant "listed" his property for sale with Mercia, a real estate agent. In the spring of 1963 the plaintiffs, through the efforts of Mercia, became interested in the purchase of certain properties of the defendant located in the Town of Elmore, Vermont.

Following a period of negotiations by Mercia with plaintiffs and the defendant, the plaintiffs and defendant entered into a written "Option Agreement" reading in part as follows:

"In consideration of $200.00, paid by Thomas & Rita Buchanan of Stowe, Vermont to Roger Billings of Elmore, Vermont, Roger Billings does agree to give option to purchase, within a period of 90 days from April 1, 1963, said home premises, consisting principally of two dwellings, one with barn and approximately 600

acres of land, more or less, this being all of said home premises of Roger Billings.

Thomas & Rita Buchanan, to whom this option is granted, do agree to pay $5125.00, first installment, during this period of option or forfeit the $200.00, option binder. It is further agreed that Thomas & Rita Buchanan, will pay the balance as follows, should they take up this option. The purchase price agreed being a total of $20,500.00, for the property mentioned in this option, the balance payable in three subsequent annual payments of $5,125.00, the first being due one year from date of final transfer.

It is further agreed that the $200.00, deposit shall be credited to the first installment if the transaction is completed and said Roger Billings shall give Warranty Deed to said property."

The Option Agreement was dated and executed April 1, 1963. At that time the plaintiffs delivered to the defendant their check of $200.00 which was cashed by the defendant on April 17, 1963. The Option Agreement was recorded in the land records of the Town of Elmore on April 19, 1963.

Under date of April 11, 1963 the defendant also executed and delivered to John Eaton, or Eaton Lumber Company, an option to purchase his farm in Elmore and Wolcott, Vermont for the sum of $20,500.00. This option was for a period of one week from April 11, 1963 and included the real estate contained in the plaintiffs' option.

On April 11, 1963 the defendant notified Mercia that "the deal is off" and informed Mercia that he intended to sell his property to the Eaton Lumber Company. The defendant did not at that time offer to return Buchanans' check of $200.00. At some later time, the date not appearing, the defendant did offer to return to the plaintiffs the $200.00 deposit which was refused by them.

On May 9, 1963 a chancery court injunction issued on a bill of complaint brought by Eaton Lumber Company against the defendant enjoining and restraining the defendant from conveying or selling his real estate located in the Towns of Elmore and Wolcott, Vermont. This restraining order remained in full force and effect until September 4, 1964 at which time an order was issued by the Chancellor directing the defendant to convey the property in question to the Eaton Lumber Company. On September 4, 1964 the entry of "settled and

discontinued" was made in this equity action. The defendant conveyed the property to the Eaton Lumber Company during September, 1964 which he had optioned to the plaintiffs in the Option Agreement dated April 1, 1963.

The plaintiffs requested the defendant on a number of occasions to convey the property to them in accordance with the option and informed the defendant that they had the purchase money and financial backing to pay for the property.

Mr. Mercia was acting as agent for the defendant in the sale of the property in question. Plaintiffs also informed Mercia on occasions that they had the funds and were anxious to close the transaction.

The plaintiffs were ready, willing and able at all times to comply with the terms and conditions of their option agreement dated April 1, 1963.

The Chancellor found that following the execution of the Buchanan option agreement that plaintiffs employed J. Philip Rich, a consulting forester and surveyor, to examine the property records, to locate property lines, and to find boundary marks and property corners. Mr. Rich surveyed for the first time on April 8, 1963, again the third week in April, and the last day on April 26, 1963.

The plaintiff, Thomas Buchanan, devoted a great deal of time to the property following the execution of the option. He assisted in the surveys, obtained aerial photographs from the Agriculture Department, examined records, and attempted to establish definite boundary lines and corners.

The Chancellor further determined that as a result of defendant's refusal to convey the property to the Buchanans in accordance with their option, that these plaintiffs have sustained the following damages: $200.00 consideration money paid at the time the option was executed; $130.00 paid surveyor Rich; $6.50 paid for the purchase of photographs and $2.50 for a copy of the survey. Further, that Mr. Buchanan spent forty-three hours of his time in connection with the property in anticipation of exercising the option, and that $3.50 per hour is a reasonable charge, amounting to $150.50. The total, as reflected in the decretal order, amounts to $489.50.

In *Durfee House Furnishing Company, Inc.* v. *Great Atlantic and Pacific Tea Company,* 100 Vt. 204, 207, 136 A. 379, 381, 50 A.L.R. 1309, it is said:

"An option is an agreement by which one binds himself to sell and convey to another party certain property at a stipulated price within a designated time, leaving it in the discretion of such other party to take and pay for the property. *West Virginia Pulp & Paper Co.* v. *Cooper,* 87 W.Va. 781, 106 S.E. 55, 59. Although usually described as a contract, it is evident that it is not such until accepted by the optionee, for until that time it is only a continuing offer to sell and convey at the price and upon the conditions therein specified. The optionor is bound that the offer shall be kept open and available in accordance with its terms, but its acceptance rests wholly in the discretion of the optionee, and there is no obligation upon the latter with regard to it." See cases cited.

In the case of *McGuirk* v. *Ward,* 115 Vt. 221, at page 223, 55 A.2d 610, at page 611, this Court had occasion to refer to the *Durfee* opinion, *supra,* in this language, "Although in the *Durfee* opinion there is language to the effect than an option is not a contract until it is accepted by the optionee, it is apparent from a study of the opinion that this language was not meant to be taken to mean that an option is not a contract within any meaning of that word; that an option is not to be considered an option contract. * * * Thus it is apparent that all that is meant in that case is that an option is not a completed contract to sell and convey until acceptance."

Options of this nature are commonly referred to as unilateral in character, and are not converted into a bilateral executory contract until acceptance by the optionee. If conditions precedent to the right to convert a unilateral contract into a bilateral one are not met the unilateral contract does not become bilateral. *Lake Shore Country Club* v. *Brand,* 339 Ill. 504, 521, 171 N.E. 494. Notice of an unqualified acceptance of an option ordinarily serves to create a bilateral executory contract, as in the case of a conventional offer of sale and its unconditional acceptance. *West Caldwell* v. *Borough of Caldwell,* 26 N.J. 9, 138 A.2d 402.

There is no completed contract for sale of the property described in an option until the optionee has accepted the offer according to its terms, or to put it otherwise, has performed the conditions contained in the offer. *Durfee House Furnishing Company, Inc.* v. *Great Atlantic and Pacific Tea Company, supra,* 100 Vt. at p. 208,

136 A. 379. Such provisions must be strictly complied with by the optionee. 17 A.Jr.2nd Contracts, section 60.

With the foregoing general principles in mind, it is urged by the defendant that the option was not accepted by the plaintiffs. To this end, it is claimed by defendant that plaintiffs failed to pay or tender the first installment of $5,125. on the purchase price which became due within 90 days from April 1, 1963.

The defendant's claim misses the mark in two particulars. First, the defendant was under obligation to keep the offer open during the option period. Here, he renounced his unilateral agreement.

■■ An option is a continuing offer, and if supported by a consideration, it cannot be withdrawn before the time limit. *Adams* v. *Peabody Coal Co.*, 230 Ill. 469, 82 N.E. 645, 646; 1 Williston on Contracts, Third Edition, section 61 B, page 200. The option in question was a continuing one based upon an executed consideration, and thus the defendant's promise contained therein was irrevocable for the time of its continuance and takes the classification of a unilateral contract. *Martindell* v. *Fiduciary Counsel*, 133 N.J.Eq. 408, 30 A.2d 281.

■ Secondly, the Chancellor's findings reveal that plaintiffs on a number of occasions requested that defendant convey the property to them, and informed the defendant that they had the purchase money and financial banking to pay for the property. Even though the plaintiffs did not make a tender of the $5,125.00, *in specia,* the defendant cannot complain that such a tender of the funds was not made to him when he had unconditionally repudiated the option before such payment was due.

■ It is a general rule of the law of contracts that a positive and unequivocal refusal to perform, made at maturity or before, if not seasonably withdrawn, excuses performance or tender thereof by the other party. *Hambleton* v. *U. Aja, Granite Co.*, 96 Vt. 199, 203, 118 A. 878. In such a case, an offer to perform would be a vain and idle ceremony, which the law never requires. *Hard* v. *Brown,* 18 Vt. 87.

Defendant's difficulty stems from the execution of two options to sell the farm property in question to two different potential purchasers within a ten day period for the same sale price, and to parties who desired to purchase the property and intended so to do.

▮ The defendant not only repudiated the option given to the plaintiffs, but by and through his own conduct was later enjoined from conveying the property in the action brought against him by the Eaton Lumber Company.. An optiongiver's evasion or prevention of the exercise of an option excuses optionee's tender of performance and other conditions precedent to acceptance. *Loughney* v. *Quigley,* 279 Pa. 396, 124 A. 84; 1 Williston on Contracts, *supra,* section 61D at page 206.

▮ The defendant asserts, without the benefit of supporting authorities, that the claims of the plaintiffs for Mr. Buchanan's time, the cost of survey maps, photostats of aerial maps and the services of surveyor Rich are not recoverable in this action. In support of this view, it is claimed that had the option ripened into a contract and a sale consummated, these expenses could not have been used to reduce the purchase price. If Mr. and Mrs. Buchanan had expressly refused to exercise the option that they could not have successfully prosecuted an action to recover these sums of money.

Defendant further contends that the foregoing were incurred for the sole purpose of obtaining information upon which plaintiffs might rely in deciding whether or not they would exercise their rights under the option agreement.

We have no difficulty in confirming the Chancellor's view that the plaintiffs are entitled to recover the deposit of $200.00.

The option dated April 1, 1963 was revoked by the defendant on April 11, 1963. After this latter date the plaintiffs could not rely upon defendant's performance of the option. Under the doctrine of avoidable consequences it follows that plaintiffs cannot recover damages flowing from consequences which they could have reasonably avoided after April 11, 1963. 22 Am.Jur.2d Damages, section 30. See cases cited.

The evidence fails to demonstrate what portion of Mr. Buchanan's charges for personal services, and out of pocket expenses for maps and surveyor's fees, were incurred either before or after April 11th. In the absence of such a finding there must be a remand on the issue of damage only. We affirm on the issue of defendant's liability.

*Par. 1 of the decretal order is affirmed as to liability. The order directing payment of $489.50 is reversed and cause remanded for a*

*further hearing on the assessment of proper damage in accordance with the views expressed in this opinion.*