# Marcel Simoneau v. Northern Terminals, Inc., The Justin Corporation, and The Morgan Corporation

[569 A.2d 483]

No. 85-425

Present: Allen, C.J., and Peck and Mahady, JJ., and Connarn, D.J. (Ret.), Specially Assigned

Opinion Filed November 17, 1989

*Jerome F. O'Neill* and *Geoffrey W. Crawford* of *Manchester & O'Neill, P.C.*, Burlington, for Plaintiff-Appellee.

*Robert J. Perry,* South Burlington, for Defendant-Appellant.

**Mahady, J.** Northern Terminals, Inc. (Northern) appeals from a superior court decision awarding compensatory and punitive damages for its failure to honor plaintiff's preemptive right of first refusal to purchase property which plaintiff leased from Northern in Burlington. We affirm the judgment as to liability but reverse the trial court's award of damages.

## I. *Background*

Northern acquired the parcel in question, 315 Shelburne Road, Burlington, in 1968 and built a convenience store and service station. Northern's gasoline supplier was Chevron U.S.A., Inc., which guaranteed the financing for Northern's improvements and on March 21, 1969 took a first mortgage on the property, as well as on other properties owned by Northern. The mortgage included an after-acquired indebtedness provision, subjecting the property to any future indebtedness for which Northern might become liable.

Some four months after the parcel was mortgaged, Northern leased the land and improvements to plaintiff for ten years, with a five-year renewal option. The lease gave lessor and lessee mutual rights of first refusal on lessee's business and on lessor's property, referred to as the "demised premises" and described as a parcel with 60 feet of frontage and 135 feet deep. The right of first refusal stated as follows:

> In the event the Lessor (Seller) should elect to sell the demised premises at any time during this lease or the renewal thereof, said Lessor (Seller) shall give to the Lessee (Tenant) the right of first refusal to buy. In event the Lessor does elect to sell the demised premises it will give written notice of said intentions to the Lessee.

In 1976, in connection with unrelated litigation, Chevron obtained attachments on all of Northern's property, including 315 Shelburne Road. The trial court found that at about this time it became clear that Chevron would not renew its supply contract with Northern, and found that the seller and Chevron "became embroiled in litigation in both Federal and State courts . . . ."

On July 6, 1976, Northern and affiliated companies leased their gasoline sales business in Vermont and New York to David Adams, operating via the Vermont Morgan Corporation. The lease gave Adams an option to buy most of Northern's properties, including 315 Shelburne Road, which option pertained to a parcel measuring 60 by 300 feet, of which the demised premises of 60 by 135 feet was a portion.

On January 25, 1978, Northern entered into a purchase and sale contract (the 1978 Agreement) with defendant Justin Corporation (a company also controlled by Adams) for all of Northern's properties in Vermont and New York, including 315 Shelburne Road, for an aggregate purchase price of $4,550,000. The greater part of the purchase price, about $2.4 million, represented the assumption by the buyer of Northern's existing debt to Chevron, which in turn was secured by the several properties to be sold under the agreement. The date of sale under the 1978 Agreement was deemed to be November 1, 1977.

It is unclear from the findings whether Northern notified plaintiff of either the 1976 or the 1978 agreements.[1] In any event, when plaintiff acknowledged that he learned of these agreements and of the pending sale of 315 Shelburne Road, of which the "demised premises" were a part, he filed an action against both Justin and Northern for injunctive relief and damages. On November 9, 1978, the superior court enjoined the parties to the 1978 Agreement from completing the sale of 315 Shelburne Road. That order has remained in effect throughout

---

[1] The trial court hearing the issue of liability found that defendant "breached its right of first refusal granted in its lease to the Plaintiff, Marcel Simoneau, by failing to observe Marcel Simoneau's right of first refusal to purchase 315 Shelburne Road," while the court on the damages issue found that on or about the date of the 1978 Agreement "the Seller [defendant] notified the Tenant of the sale, and he immediately protested." The difference is not critical to the outcome of this appeal.

this litigation, and the property has not been conveyed under the 1978 Agreement, though Northern contends that the conveyance would not have ensued in any event, as Chevron commenced a foreclosure action on the property.

Following a one-day trial on liability, the trial court entered an order finding defendant Northern liable for breach of plaintiff's right of first refusal and retaining jurisdiction "as to the matters not litigated." Subsequent hearings were conducted on the question of plaintiff's remedy, resulting in an order that Northern convey title within 60 days to the plaintiff and pay the sum of $25,000 in punitive damages or, in the event title was not transferred, pay $87,670.78 as compensatory damages and $125,000 as punitive damages. Compensatory damages were awarded based on what the court apparently concluded was the difference between what the offering price to the buyer under the 1978 Agreement should have been and the market value of the property at the time of trial. Northern did not transfer title, and final judgment was entered for plaintiff in the amount of $232,670.78.

## II. *Discussion*

█ The trial court's finding of liability was based upon Northern's having entered the 1978 Agreement in derogation of plaintiff's preemptive rights. We do not disturb this portion of the trial court decision. Whatever remained of Northern's interest in 315 Shelburne Road and however heavily encumbered it might have been at the time it entered the 1978 Agreement, Northern was required to give formal notice to plaintiff. Circumstances strongly suggest that plaintiff would have been unable to step into the shoes of the prospective buyer under the 1978 Agreement; that, however, was not for Northern to conclude. Plaintiff had a contractual right to learn of the facts and to respond for himself.

█ The remaining task of the trial court was to determine damages, using as its calculus "the value of the option contract to the optionee at the time of the breach." *Tolman v. Carrick*, 136 Vt. 188, 190, 385 A.2d 1119, 1121 (1978). The burden of proof

in establishing the value was on plaintiff. See *Sexton v. Neun*, 131 Vt. 372, 380, 306 A.2d 113, 118 (1973).

In determining that value it was first essential to explore the quality of the interest to be tendered by the seller under the first refusal right. Plaintiff does not contend that he had a right to purchase the property free of encumbrances or that his right took priority over Chevron's mortgage—his complaint states only that "Plaintiff stands ready, able, and willing to purchase the demised premises on the same terms and conditions that said premises are being offered to Defendant, Justin Corp." Plaintiff was bound to assume, and conform to, the role of the third-party purchaser with respect to the encumbrances. *Eliminator, Inc. v. 4700 Holly Corp.*, 681 P.2d 536, 539 (Colo. App. 1984).

The 1978 Agreement clearly contemplated that the buyer would assume the Chevron mortgages on all of the properties conveyed. Accordingly, the "after-acquired indebtedness" clause in the Chevron mortgage, under which the mortgage on the subject property secured other debts to Chevron, was contemplated by the parties to the 1978 Agreement. The value of the property to plaintiff was necessarily affected by the aggregate amount of debt—$2.4 million at the time of the 1978 Agreement—to which the property was potentially subject.

The trial court appears to have misapprehended this dominant fact. Based on the respective amounts of equity and debt allocated to the several properties in the 1978 Agreement, the court determined in Finding No. 140 that, had the property been offered to plaintiff in 1978, he would have had to pay $60,000 to Northern and assume a portion of the Chevron debt in the amount of $42,329.22. Each property covered in the 1978 Agreement, however, was mortgaged to secure the full amount of debt owed Chevron by Northern; a buyer of one did not have the option to allocate only a portion of the indebtedness to the parcel he sought and somehow escape liability for the remaining debt.[2] The mortgage on the 315 Shelburne Road property

---

[2] This fact was made manifest in the 1986 foreclosure judgment obtained by Chevron on 315 Shelburne Road, showing a total debt of over $4 million then

simply could not have been discharged for $42,329.22. That is, even if plaintiff had paid Chevron the $42,329.22, the property would still have been subject to a mortgage securing a debt of well over two million dollars.[3]

■■ Our review of a trial court's factual findings pertaining to damages is deferential. We will affirm its findings unless they are clearly erroneous. *Meadowbrook Condominium Ass'n v. South Burlington Realty Corp.*, 152 Vt. 16, 26, 565 A.2d 238, 243–44 (1989). Here, however, we must conclude that the trial court's award of damages to plaintiff is clearly erroneous and not supported by the record. At the time of the breach in 1978, plaintiff's right of first refusal was worth little or nothing—he had only a right to purchase property encumbered by a mortgage that secured a debt far exceeding the market value of the property. It is possible in theory that the debt would have been paid by other parties, thereby liberating 315 Shelburne Road of the mortgage, but this hypothetical eventuality does not support the amount of damages ordered by the court. Plaintiff is entitled to a judgment, but only nominal damages are appropriate.[4]

*The judgment of the trial court on liability is affirmed. The judgment on damages is reversed, and the matter is remanded*

------

secured by the mortgage on the property. *Chevron U.S.A., Inc. v. Northern Terminals, Inc.*, No. S-556-80 (Vt., Chit. Sup. Ct. June 27, 1986).

[3] Other findings by the court fail to clarify matters:

144. The difficulty with arriving at a definitive solution is because the lien evidence is inadequate. Could the seller pass clear title either in 1977 or 1978?

145. The fact the Sales did occur under the 1978 agreement leads the Court to the conclusion that clear title could have been passed had the Seller wished.

146. Whether clear title can be passed now is conjecture.

147. Assuming it cannot be passed now because of existing liens in place subsequent to November 1, 1977, the value of the option can be determined.

It is difficult to fathom what the trial court contemplated by "clear title" in these and other findings. Certainly Northern was never under an obligation, nor was it in a position, to offer unencumbered title to plaintiff.

[4] Our decision renders moot the additional issues raised by Northern, including the argument that the court erred in basing its damage award on the value of the entire 60 by 300 feet parcel at 315 Shelburne Road rather than the "demised premises."

*to the trial court for entry of judgment in accordance with this opinion.*