# Toys, Inc. v. F.M. Burlington Company d/b/a/ Burlington Square

[582 A.2d 123]

No. 88-200

Present: Allen, C.J., Peck,* Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed August 10, 1990

---

* Justice Peck sat for oral argument but did not participate in the decision.

*Michael I. Green* and *Geoffrey W. Crawford* of *O'Neill and Crawford* and *Jarvis and Kaplan,* Burlington, for Plaintiff-Appellee.

*Robert B. Luce* of *Downs Rachlin & Martin,* Burlington, for Defendant-Appellant.

**Dooley, J.** F.M. Burlington Company, defendant below and appellant here, moved for summary judgment in this contract action pursuant to V.R.C.P. 56. The trial court not only denied the motion but awarded summary judgment on the issue of liability to plaintiff in the action, Toys, Inc. V.R.C.P. 56(c) ("Summary judgment, when appropriate, may be rendered against the moving party."). We agree with defendant that plaintiff should not have been awarded a summary judgment on all liability issues and reverse on that basis. We conclude, however, that the court was correct in awarding plaintiff summary judgment on the issue of whether a valid lease renewal option existed between the parties and also conclude that neither party is entitled to summary judgment on the remaining issues. Accordingly, we remand for trial.

On November 1, 1979, the parties entered into a lease for space in a shopping mall owned by defendant. The lease was for an initial five-year term, April 1, 1980 through February 28, 1985, and plaintiff was given an option to renew for five additional years. The option provision in the lease is as follows:

> Tenant shall be provided one option to extend the lease for five years, provided that tenant was not in default of the lease at any time during the initial term upon the same terms and conditions except:
> (a) there shall be no further right to renew;
> (b) the fixed minimum rental shall be renegotiated to the then prevailing rate within the mall.

Should the tenant wish to renew, tenant shall give one year's written notice of intention to exercise the option.

On February 7, 1984, Toys, Inc. wrote to F.M. Burlington, pursuant to the lease, and said, "[P]lease be advised that Toys, Inc. hereby notifies F.M. Burlington Company of its intent to exercise its option to renew." F.M. Burlington responded on February 24, 1984. In that letter defendant confirmed that plaintiff was exercising its option to renew and then stated the prevailing rate per square foot in the mall.

On March 1, 1984, plaintiff responded. This letter stated that "Toys, Inc.'s notice of intent to renew was premised on a substantially different understanding of the prevailing rate." It described a conversation with defendant's leasing agent that involved the quotation of a prevailing rental rate well below that stated in defendant's letter of February 24th and included the understanding that "we would be completely free to renegotiate the issue of a fixed minimum rent without being bound to a prevailing rate." The letter concluded, "I trust . . . that in the coming months we will be able to renegotiate a mutually agreeable rent structure." On March 2, 1984, defendant responded by letter stating:

You are of course completely free to renegotiate the rate without reference to the prevailing rate. However, as far as the rights of the Tenant under the option are concerned, the prevailing rate . . . is $10.00 [per square foot].

The prevailing rate is subject to change until such time as an agreement for renewal is reached.

On July 17, 1984, the parties met and seemed to come to an understanding as to a rent structure for the renewal term. The new rent structure was not significantly different from that specified by defendant in February, except that the first-year rent was lower than the prevailing rate and the last-year rent was higher than the prevailing rate. Over the five-year period, the new rent averaged to the prevailing rate. Defendant wrote to plaintiff the next day describing the terms and stated "[i]f this offer is accepted, please have a copy of this letter executed and returned to me. *This offer is valid through August 1, 1984.*"

(Emphasis added.) Plaintiff responded with a request for more time to consider the offer and was given until August 15, 1984. On August 15, 1984, plaintiff wrote to defendant:

> It is necessary for my clients at this time to ask for an additional two (2) week extension from [August 15, 1984], in which to accept your offer as set forth in your July 18, 1984 correspondence.
>
> Please let me know if there is a problem with the above request.

Defendant did not respond, and plaintiff did not accept or reject the "offer" of July 17, 1984. During this time, plaintiff was seeking an alternative location for its toy store in case negotiations with defendant did not work out.

Sometime in the late summer or early fall, plaintiff began pursuing the purchase of a building in which to locate its store. In October, a loan application was submitted to a financing source for funds to purchase the building. The next communication between the parties to this action was a letter from defendant dated November 1, 1984 and informing plaintiff that "Burlington Square is listing store no. 20 for lease effective March 1, 1985." On November 9, 1984, plaintiff wrote to defendant:

> On February 7, 1984, my clients informed you in writing of their intention to exercise the option to renew in the above matter. At this time we would like to be advised of the prevailing rate so that a lease can be signed as soon as possible.
>
> In reference to your November 1, 1984[,] letter, we would consider any attempt on your part to lease store No. 20 to any party other than Toys, Inc., a breach of our lease.

Although the paper jousting continued, negotiations between the parties ceased. Defendant took the position that plaintiff had failed to accept the prevailing rate in February and that they had let the July offer lapse. Plaintiff stated that it had exercised the option to renew with the February 7th letter and defendant was bound at its prevailing rate. Plaintiff left the

mall and purchased the building for which it earlier sought financing. Plaintiff then sued for breach of contract.

After discovery and based generally on the facts set forth above, defendant moved for summary judgment, arguing that: (1) the option provision in the lease is actually an unenforceable agreement to agree; (2) even if a valid option existed, it was never effectively exercised by plaintiff; (3) if plaintiff had a right of renewal, it waived it through its conduct. The trial court found that the lease provision created a binding option, that plaintiff exercised the option by letter on February 7, 1984, and that plaintiff never waived its acceptance of the renewal. Accordingly, it awarded summary judgment to the plaintiff. Defendant renews its same arguments here, urging that we grant it summary judgment or, alternatively, remand for trial.

We start by reviewing the standards for summary judgment under Rule 56. Summary judgment is appropriate only if there is "no genuine issue as to any material fact." V.R.C.P. 56(c). The party against whom summary judgment is sought is entitled to the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists. See *Creighton v. Town of Windsor*, 154 Vt. 348, 352–53, 577 A.2d 681, 684 (1990). The facts bearing on the issue must be clear, undisputed or unrefuted. See *id.* In a case such as this where both parties are seeking summary judgment, both parties are entitled to these benefits when the opposing party's motion is being judged.

We agree with the trial court that summary judgment for plaintiff was appropriate on the first issue raised by defendant. The lease provision created a valid option for plaintiff to renew for an additional five years. Defendant characterizes the lease renewal provision as merely an agreement to agree and therefore not enforceable. If defendant's construction were correct, the lease provision would not create an enforceable option. See *Reynolds v. Sullivan*, 136 Vt. 1, 3, 383 A.2d 609, 611 (1978). In *Reynolds* we held that a preliminary option agreement that was vague and uncertain in its terms "would be an impossibility to enforce." *Id.* The test is whether the option agreement contains "all material and essential terms to be incorporated in the sub-

sequent document." *Id.* The agreement in *Reynolds* was labeled as preliminary and specifically provided that the parties "agree to enter an agreement for an option" and that "more specific terms will be stated in the option to purchase." *Id.* at 2, 383 A.2d at 610.

It is not necessary under *Reynolds* that the option agreement contain all the terms of the contract as long as it contains a practicable, objective method of determining the essential terms. See *Krupinsky v. Birsky,* 129 Vt. 400, 405, 278 A.2d 757, 760 (1971) (option contract valid even though it "did not fix a price certain" where "it did appoint a mode of determining the price"); Restatement (Second) of Contracts § 33 comment a, § 34(1) (1981) ("The terms of a contract may be reasonably certain even though it empowers one or both parties to make a selection of terms in the course of performance."). We must construe the option agreement in a way to give it binding effect if possible. See *Agway, Inc. v. Marotti,* 149 Vt. 191, 194, 540 A.2d 1044, 1046 (1988) (before voiding a contract for vagueness, indefiniteness or uncertainty of expression, Court must attempt to construe the contract to avoid the defect). We are also mindful that defendant drafted the language of the option clause and that a doubtful provision in a written instrument is construed against the party responsible for drafting it. See *Trustees of Net Realty v. AVCO Financial Services,* 147 Vt. 472, 475–76, 520 A.2d 981, 983 (1986).

The option agreement states that "the fixed minimum rental shall be renegotiated to the then prevailing rate within the mall." We believe that this language sets forth a definite, ascertainable method of determining the price term for the lease extension. Within days after plaintiff stated its original intent to exercise its option, defendant replied by quoting the "prevailing rate within the mall" at that time. Neither defendant nor plaintiff have disputed the accuracy of this calculation.

Defendant puts much emphasis on the use of the term "renegotiate" in the renewal clause, as showing an intent to reach a future agreement. While the choice of wording could have been more precise, we agree with the plaintiff that the

term means that the then-existing "prevailing rate" would be determined by agreement, and does not mean that the parties would start from a clean slate in renegotiating a rent term. Even if we give defendant the benefit of all inferences and reasonable doubt, we find no genuine issue of fact bearing on whether there was an enforceable option to renew and hold as a matter of law that a valid option existed.

■ Defendant's second argument is that even if a valid renewal option existed, plaintiff did not properly exercise its option. An option is merely an agreement to hold open a specific offer to a specific party for a stated time. *Harden v. Vermont Dep't of Taxes*, 134 Vt. 122, 125, 352 A.2d 685, 687 (1976). The essence of the option must be accepted according to its terms in order to generate a binding contract. *Bricker v. Walker*, 139 Vt. 361, 364, 428 A.2d 1129, 1130 (1981); *Buchannon v. Billings*, 127 Vt. 69, 74–75, 238 A.2d 638, 642 (1968) (terms of the option "must be strictly complied with by the optionee"). The determination of whether an acceptance meets the terms of an offer is described in *Ackerman v. Carpenter*, 113 Vt. 77, 81, 29 A.2d 922, 924–25 (1943), as follows:

> We agree with the defendants' contention that an acceptance which varies from the offer will not conclude a contract. But the reply may go beyond the terms of the proposal without qualifying the acceptance. The addition may be such as fairly to import a request instead of a condition. In determining what one party intended and the other ought to have understood, regard must be had to the situation and purpose of the parties, the subject matter and course of the negotiations.
>
> The question whether there was a contract between the parties does not depend alone upon the specified facts found but also upon the reasonable inferences to be drawn from them.

(Citations omitted.) While the basic facts in this action are clear and undisputed, we cannot say the same for the "situation and purpose of the parties" and the "reasonable inferences to be

drawn from" the facts, two critical factors set forth in *Acker-man.*

Plaintiff's theory is that both it and defendant were bound as of February 7, 1984 as a result of the initial letter. While this is one interpretation of the facts, it is not the only one. The letter can be construed as an expression of intent only with the necessary action to await the determination of the prevailing rental rate. Indeed, the March 1 letter, which stated that the earlier notice of intent to renew was based on a substantially different understanding of the prevailing rate, is consistent with this view. It is difficult to reconcile plaintiff's theory with its actions in July when it refused to agree to terms that were slightly more favorable to it than those it says it became bound to in February. When we consider the overall course of dealings between the parties, their evident purposes, and the inferences to be drawn from the facts, we cannot say as a matter of law that plaintiff accepted the option according to its terms. It was error to award summary judgment to plaintiff on this issue.

While we do not believe it was appropriate to award summary judgment to plaintiff on this issue, we do not conclude that summary judgment for defendant would be appropriate. When we give plaintiff the benefit of all reasonable doubts and inferences, we cannot say as a matter of law that plaintiff failed to accept the option according to its terms. The question must be left to the factfinder.

The third issue is whether the actions of plaintiff subsequent to the purported exercise of the option constituted a waiver of that acceptance. As with the second issue, we find that this issue is not appropriate for summary judgment for either party. We have defined waiver of a contract right as:

> the intentional relinquishment or abandonment of a known right, and the act of waiver may be evidenced by express words as well as by conduct. Unlike an estoppel, it involves the act or conduct of one party to the contract only, and involves both knowledge and intent on the part of the waiving party. A waiver does not necessarily imply that one has been misled to its prejudice or into an altered position.

*Lynda Lee Fashions, Inc. v. Sharp Offset Printing, Inc.*, 134 Vt. 167, 170, 352 A.2d 676, 677 (1976) (citations omitted).

Defendant argues that plaintiff's conduct subsequent to its initial letter exercising the option was so inconsistent with the intent to renew that plaintiff waived the taking of the option. It cites to the prolonged and inconclusive negotiations between the parties, the failure of plaintiff to respond to an overture to arbitrate the dispute, and plaintiff's active pursuit of real estate outside of the mall as evidence of this waiver. Plaintiff responds that it did nothing directly inconsistent with the February 7, 1984 renewal and that it was free to, and encouraged by defendant to, renegotiate its rent outside of the terms of the option, without impairing its acceptance of the option. See *Ackerman*, 113 Vt. at 81, 29 A.2d at 925 (reply to option may go beyond the terms of the proposal without qualifying the acceptance).

■ Again, the basic facts are clear but the inferences to be drawn from the facts and the intentions and purposes of the plaintiff are not clear. A factfinder could find a waiver based on this record, but that conclusion is not commanded as a matter of law. Summary judgment was in error.

*Reversed and remanded.*