## Charles and Gwendolyn Cameron, et al. v. Double A. Services, Inc., Henry F. Richardson and James E. and John J. Brooker

[595 A.2d 259]

Nos. 89-404 and 89-528

Present: Allen, C.J., Gibson, Morse and Johnson, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed May 31, 1991

578

*Jesse D. Bugbee* of *Kissane, Yarnell & Cronin*, St. Albans, for Plaintiffs-Appellees.

*Keith J. Kasper* of *McNamara, Fitzpatrick & McCormick*, Burlington, for Defendants-Appellants Double A. Services, Inc. and Richardson.

*Robert J. Perry* of *Perry & Schmucker*, South Burlington, for Defendants-Appellants Brooker.

**Gibson, J.** In this declaratory judgment action, defendants Double A. Services, Inc. and Henry Richardson, president and sole shareholder of Double A. Services, Inc., appeal from a

judgment that plaintiffs (the Camerons) have the right, pursuant to their right of first refusal, to purchase certain real estate that is the subject of a purchase and sale agreement between Double A. Services and defendants James and John Brooker. The Brookers, whose counterclaim and cross-claim are still pending before the trial court, have also filed briefs seeking reversal. We affirm.

I.

In July of 1985, the Camerons sold a parcel known as Cam-Well Farm to Double A. Services with the understanding, which was never reduced to writing, that Double A. Services would attempt to keep the land in agricultural use. The transfer was financed through a mortgage held by the Camerons and memorialized in a warranty deed, promissory note, mortgage deed, mortgage agreement, and a document entitled "Option." The mortgage agreement required written notice to be provided to the Camerons before the property could be conveyed or encumbered in any way. The option granted members of the Cameron family "a right of first refusal" to repurchase the property, and provided in relevant part:

> The Cameron family or each of them will have thirty days from the date of notice of proposed sale in which to notify the Optionor of their desire to exercise this Option. . . .
>
> . . . .
>
> At the time that the Optionor receives a bona fide offer to acquire the premises, the Optionor will be deemed to offer the property to each Optionee under the identical terms offered by the third person.

In the spring of 1987, Double A. Services entered into discussions with James and John Brooker about a potential sale of the property. On May 6, 1987, the Brookers and Double A. Services executed a purchase and sale agreement, which included a document entitled "Addendum # 1" bearing the same date. Although the Camerons became aware of the negotiations, they were given no written notice of the agreement until they received a letter, dated May 20, 1987, from Double A. Services indicating that a purchase and sale agreement had been signed.

The letter provided no details. Through their attorney, the Camerons obtained a copy of the agreement, including addendum one, on June 21, 1987.

Three days later, a second addendum dated June 24, 1987 was delivered to the Camerons. It provided in pertinent part:

> 1) Seller has the right to plant and harvest grass crops on the property from January 1, 1988 until Purchasers sell each lot to new owners for residential building purposes. Unless otherwise agreed to by the Purchasers, the Seller shall cease use of each lot upon its sale by Purchasers, and Seller recognizes that he may lose crops as a result of the termination period.
>
> . . . .
>
> 4) Prior to July 24, 1988, Seller may remove all personal property from the barns including plumbing, electrical, tanks, drinking bowls, gutter cleaners, stanchions, and any other mechanical apparatus as long as the structures (barns) remain.

The trial court found that, if the Camerons exercised their right of first refusal, addendum two would, as a practical matter, prevent them from farming the property or using it for any purpose but residential development; further, it would allow Double A. Services to harvest grass crops in perpetuity if the property were not developed residentially. The Brookers, who were agreeable to addendum two, planned to develop the property.

In early July 1987, the Camerons notified Double A. Services that they intended to exercise their right of first refusal, but noted that the conditions and effect of various addenda needed to be ironed out. A closing date, initially set for July 28, 1987, was continued to August 19, 1987. Resolving the details, however, proved to be insurmountable; the Camerons refused to accept the terms included in addendum two and Double A. Services insisted upon including those terms. The Camerons did not go to the closing, choosing instead to file this action on August 17, 1987. The trial court declared that addendum two was not binding on the Camerons and that they have the right to purchase the property under the terms of the purchase and sale agreement and addendum one.

■ On appeal, defendants make numerous arguments, which may be consolidated into the following contentions: (1) addendum two is binding upon the Camerons; (2) the Camerons waived their right of first refusal by failure to accept the offer and tender performance; (3) the trial court committed reversible error by referring to the right of first refusal as an option; and (4) admission of Mr. Cameron's testimony about presale discussions with Double A. Services regarding future uses of the property constitutes reversible error.[1]

## II.

It is undisputed that the right of first refusal gives the Camerons the power to accept the offer of sale on "the identical terms offered by the third person," the Brookers. At trial, the parties disagreed, however, about whether addendum two was a part of the original purchase and sale agreement. The trial court found that addendum two was intended to modify the agreement, concluding that addendum two was an attempt by Double A. Services to withdraw the original offer after it had ripened into an irrevocable option in favor of the Camerons. On appeal, defendants contend that the court was clearly erroneous in its finding and conclusion.

■■ Findings made by a trial court will not be set aside unless, taking the evidence in the light most favorable to the prevailing party, and excluding the effect of modifying evidence, they are clearly erroneous. *Bruntaeger v. Zeller*, 147 Vt. 247, 250, 515 A.2d 123, 125 (1986). We will uphold the court's conclusions if they are supported by its findings of fact. *Gal-*

---

[1] In their brief, the Brookers contend that the Camerons are equitably estopped from asserting their right of first refusal and are limited to demanding acceleration of the mortgage payments by the terms of the mortgage. These arguments were not presented to the trial court, however, and have therefore been waived. *American Trucking Ass'ns v. Conway*, 152 Vt. 383, 387, 566 A.2d 1335, 1337 (1989) ("issues not raised before the trial court are waived on appeal"). We accordingly decline to address them.

Similarly, the Camerons argue that Double A. Services breached its obligation to deal with them in good faith by its insistence on addendum two. The record before us provides no indication that this argument was made before the trial court. Given our disposition of the case, we need not reach the contention.

*lagher v. McCarthy*, 148 Vt. 258, 263, 532 A.2d 557, 559 (1987). It is the function of the trial court, as factfinder, to judge the credibility of the witnesses and the weight to be given their testimony. *Id.* at 263, 532 A.2d at 560.

██ Defendants insist that their uncontradicted testimony establishes that addendum two was merely a memorialization of terms that were part of the original oral agreement. The trial court's findings and conclusions, however, implicitly reflect a decision not to accept defendants' testimony. Ample support for this decision is provided by the terms and circumstances surrounding the creation of addendum two. When the Camerons requested a copy of the Brookers' offer, they were given the purchase and sale agreement and addendum one. Addendum two was not included. In fact, it was not then in existence since it was not executed until June 24, 1987. As defendants admit, addendum two was drafted after they became aware the Camerons were interested in exercising their right of first refusal, and was delivered to the Camerons three days after the other documents. Addendum two's practical effect would make it all but impossible for the Camerons to purchase the property and retain its agricultural character, which is what Double A. Services knew the Camerons wanted to do. Condition four is in direct conflict with an express easement in the warranty deed from the Camerons to Double A. Services, which set forth water line rights and responsibilities on the property. Under these circumstances, the trial court could reasonably infer that addendum two was an attempt to withdraw the original agreement, and decline to accept defendants' testimony that it was a later-memorialized part of the original agreement. See *Connors v. Town of Dorset*, 134 Vt. 233, 235, 356 A.2d 536, 537 (1976) ("Where the evidence is conflicting or would support different inferences, credibility and weight are for the court when it sits as trier of facts."); cf. *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 50, 582 A.2d 123, 127 (1990) ("The question whether there was a contract between the parties does not depend alone upon the specified facts found but also upon the reasonable inferences to be drawn from them."). Accordingly, we cannot conclude that the trial court's finding is clearly erroneous or its conclusion unsupported.

The Brookers also argue that the purchase and sale agreement plus addendum one was not supported by consideration from the Camerons and could therefore be withdrawn by Double A. Services at any time before the Camerons accepted the offer. The Brookers apparently contend that the Camerons were required to provide consideration at or after the time of the Brookers' agreement with Double A. Services in order to make the offer irrevocable. Although the Brookers do not explicitly say so, they seem to argue that addendum two worked as a revocation or withdrawal of the original agreement.

First, we note that this contention is at odds with defendants' position that addendum two was an integral part of the original agreement. Second, under the terms of the right of first refusal, the Camerons were not required to provide consideration at or after the time of the Brookers' offer. It is undisputed that the Camerons had provided consideration for their right of first refusal at the time they sold the property to Double A. Services. When the Brookers entered into their agreement with Double A. Services on May 6, 1987, the right of first refusal ripened into an irrevocable offer from Double A. Services on the terms offered by the Brookers, as found by the court. See *Bricker v. Walker*, 139 Vt. 361, 364, 428 A.2d 1129, 1131 (1981) ("a right of first refusal in effect becomes an option with the appearance of a purchaser, other than the optionee, who is ready, willing and able to buy"); *Buchannon v. Billings*, 127 Vt. 69, 75, 238 A.2d 638, 642 (1968) ("An option is a continuing offer, and if supported by a consideration, it cannot be withdrawn before the time limit.").

## III.

Defendants contend that the Camerons waived their right of first refusal by failing to communicate a "mirror image" acceptance of the offer and refusing to attend the closing.[2] "The essence of the option must be accepted according to its terms in order to generate a binding contract." *Toys, Inc.*, 155 Vt. at 50,

---

[2] Defendants also contend that the Camerons waived their right of first refusal by refusing to accept the terms of addendum two. This argument is premised on defendants' contention that addendum two is binding on the Camerons, an argument we have rejected.

582 A.2d at 126. Tender of performance is not required where there has been "a positive and unequivocal refusal to perform." *Buchannon v. Billings*, 127 Vt. at 76, 238 A.2d at 642. "An optiongiver's evasion or prevention of the exercise of an option excuses optionee's tender of performance and other conditions precedent to acceptance." *Id.* at 76, 238 A.2d at 642–43 (citing 1 W. Jaeger, Williston on Contracts § 61D, at 206 (1957)); see *Jenkins v. Thrift*, 469 So. 2d 1278, 1280 (Ala. 1985) (where optionor refused to receive letter from optionee exercising option, optionee's complaint requesting specific performance within time frame of option constituted acceptance); see also *Simoneau v. Northern Terminals, Inc.*, 153 Vt. 146, 149, 569 A.2d 483, 484–85 (1989) (liability for failure to honor right of first refusal established where plaintiff filed suit without formally accepting offer or tendering performance).

In the instant case, the trial court found that the Camerons were willing to perform under the terms of the agreement, including addendum one, but that defendants were unwilling to convey the property under those terms. Further, the court found that the Camerons expressed the requisite intention to exercise their option and that tender of performance was excused by defendants' insistence on addendum two. We note that suit was filed by the Camerons two days before the date of closing. Although more than one interpretation of the facts is possible, the resolution of conflicts in the testimony is the function of the trial court, and we cannot say that the trial court's findings are clearly erroneous. Cf. *Toys, Inc.*, 155 Vt. at 51, 582 A.2d at 127 (when given the benefit of all the reasonable doubts and reasonable inferences to be drawn from the facts, whether option was accepted was a question that "must be left to the factfinder").

## IV.

Defendants contend that the court's characterization of the right of first refusal as an option requires reversal. Initially, we note that the right of first refusal is a separate document entitled "Option" and that section one expressly states that "Double A. grants to the Camerons a right of first refusal"; thus, the court may well have been using the title as a shorthand refer-

ence. Additionally, under our prior cases, "a right of first refusal in effect becomes an option with the appearance of a purchaser, other than the optionee, who is ready, willing and able to buy." *Bricker v. Walker*, 139 Vt. at 364, 428 A.2d at 1131. But see 1A A. Corbin, Corbin on Contracts § 261, at 468 & n.9, 470 (1963) (although closely related, a right of first refusal may or may not be an option contract). In any event, even if we assume it was erroneous to call the right of first refusal an option, we perceive no reversible error in the court's characterization. See V.R.C.P. 61 (harmless error rule).

## V.

█ The Brookers assert that Mr. Cameron's testimony about presale discussions with Henry Richardson regarding future uses of the property violates the parol evidence rule and requires reversal.[3] The Camerons, however, argued before the trial court that the testimony was not being offered to vary the written terms of their sale of Cam-Well Farm to Double A. Services but, rather, to help explain why they wished to exercise their right of first refusal. The court allowed the testimony on the latter theory. The court's opinion indicates that it was fully aware of the parol evidence rule and considered the testimony only for purposes that do not offend the rule. The testimony is not grounds for reversal.

*Affirmed.*

---

[3] The Brookers also objected at trial on the basis of relevancy, but have not pursued this argument on appeal.