STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION

|  | } | |
|--|---|--|
| In re Jurisdictional Opinion # 6-007: | } | |
| Wright[1] Parcel Act 250 Subdivision | } | Docket No. 55-4-10 Vtec |
| McBride Parcel Act 250 Subdivision | } | Docket No. 56-4-10 Vtec |
| (Appeals of Willey) | } | |
|  | } | |
|  | } | |

Decision and Order on Cross-Motions for Partial Summary Judgment

Appellant-Applicants William H. and M. Constance Willey appealed from a decision of the District Coordinator of the District 6 Environmental Commission determining that their Act 250 applications to subdivide and auction three lots from each of two large parcels were incomplete. Appellant-Applicants (Applicants) are represented by Mark G. Hall, Esq.; the Land Use Panel of the Natural Resources Board is represented by John H. Hasen, Esq.; and Interested Persons James and Eloise Hedbor have entered an appearance representing themselves.

All that is at issue in these appeals is whether Applicants' Act 250 applications are complete; nothing about the merits of the applications is before the Court. Applicants and the Natural Resources Board have each moved for summary judgment. In considering these cross-motions for summary judgment, the Court gives each party "the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." City of Burlington v. Fairpoint Commc'ns, 2009 VT 59, ¶ 5, 186 Vt. 332 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)). The following facts are undisputed unless otherwise noted.

---

[1] As discussed at an early pretrial telephone conference in this matter, Judge Wright is not related to this property in any way.

Appellant-Applicants own two large adjacent parcels of land on the easterly side of West Shore Road in the town of South Hero, Vermont, as well as a narrow crescent of shoreline at Sawyer Bay on the westerly side of the road that is proposed to provide beach access for at least some of the subdivided parcels.

On March 10, 2010, Appellant-Applicants filed Act 250 applications seeking to subdivide each large parcel into three lots for sale at auction.[2] The applications used the short form of Act 250 application Schedule B, which states that it is "designed primarily for projects with limited potential for significant adverse impact under the criteria of Act 250."

The northerly large parcel is known as the Wright or Wright Farm Parcel; it contains approximately 148 acres and is bounded on its north by Sunset View Road. It is proposed to be divided into three parcels, each with frontage on West Shore Road, and shown on the subdivision plan from north to south as Sawyer Bay Parcel 2 (22.8 acres in area), Sawyer Bay Parcel 1 (22.9 acres in area), and Remaining Wright Farm Parcel 3 (102.3 acres in area). Sawyer Bay Parcel 2 also has frontage on Sunset View Road.

The southerly large parcel is known as the McBride or McBride Farm Parcel; it contains 34.62 acres and is bounded on the south by Station Road. It is proposed to be divided into three parcels, shown on the subdivision plan from north to south as McBride Parcel 2 (17.61 acres), McBride Parcel 1 (11.93 acres and containing an existing house), and McBride Parcel 3 (5.08 acres). McBride Parcel 2 has frontage only on West Shore Road; McBride Parcel 1 has frontage on both West Shore Road and Station Road; and McBride Parcel 3 has frontage only on Station Road.

The subdivision plan shows a drainage course flowing from east to west across

---

[2]   Applicants do not contest Act 250 jurisdiction over the proposed subdivision by auction, 10 V.S.A. § 6001a, or the fact that the property is already subject to the Act 250 Permit 6G0470 series.

2

the northerly portion of McBride Parcel 2, across (under)[3] West Shore Road, and onto the Hedbor property towards Lake Champlain.

Both large parcels are or have been in agricultural use. On March 12, 2010, the District Coordinator issued a letter, denominated Jurisdictional Opinion # 6-007, ruling that both applications were "incomplete in substantial respects" pursuant to Act 250 Rule 10(D), and declining to accept them for filing. The sole reason given in the March 12 ruling was that, under Act 250 Criterion 9(B) (10 V.S.A. § 6086(a)(9)(B)), the application "do[es] not address the subdivision[']s impact on the primary agricultural soils." With respect to Criterion 9(B), both applications had stated: "Criterion 9(B) does not apply to this application as no impact to any soils, primary agricultural or not, will occur due to the subdivision or sale by auction as no earth disturbance or construction of any kind is proposed as part of this application."

With respect to Criterion 9(B), Applicants later prepared and provided maps of the agricultural soils classifications on the parcels, and obtained a letter from the Vermont Department of Agriculture, Food and Markets to submit in connection with any necessary analysis of the primary agricultural soils on the property.

Applicants had also applied for and had received a Town of South Hero subdivision permit, not at issue in this appeal. The Town's subdivision approval process had required Applicants to demonstrate that each resulting lot would be of a size and configuration that would meet the zoning standards and that each resulting lot would have water supply and wastewater disposal capacity. (See Hamlin Aff. ¶¶ 10, 30, filed Aug. 11, 2010.) Applicants met the latter requirement for Town subdivision approval by obtaining state Wastewater System and Potable Water Supply permits (Nos. WW-6-2194 and WW-6-2195) for the two subdivisions, even though Applicants

---

[3] Mr. Hedbor's filing reveals that this flow is directed through one or more culverts under West Shore Road; the potential for an effect on the Hedbor property from an alteration or increase in this flow is the primary concern of the Hedbors.

do not themselves intend to sell or develop the subdivisions for residential or any other purposes.

On March 15, 2010, the District Coordinator issued a letter, denominated as an "addendum" to Jurisdictional Opinion # 6-007, responding to the fact that he had received copies of the state Wastewater System and Potable Water Supply permits issued by the ANR for each three-lot subdivision, without any explanation from Applicants. Those permits authorized an on-site drilled well and an on-site mound wastewater system, sized to serve the standard four-bedroom single family house, on each lot. The District Coordinator's March 15 addendum requested additional information addressing all ten Act 250 criteria, as the application then appeared to the District Coordinator to be intended not only for the subdivision of the property but also for the construction of six single-family houses with associated water supply and wastewater disposal systems, even though Applicants were not planning to do the construction prior to the sale of the lots. On March 16, 2010, Applicants or their representative met with the District Coordinator to discuss reconsideration of the March 15 addendum, but they did not formally file for reconsideration. Instead, on April 9, 2010, Applicants filed these two appeals.

The day after filing these appeals, on April 10, 2010, Applicants' engineer met with the District Coordinator and presented a letter from the Agency of Agriculture, Food and Markets stating that the proposed subdivisions would not reduce the agricultural potential of the primary agricultural soils. At that time no additional completeness determination was made by the District Coordinator with respect to Criterion 9(B) alone.

In this de novo appeal, the Court has before it only the question of whether Applicants' Act 250 applications are complete, "applying the substantive standards that were applicable before the" District Coordinator. V.R.E.C.P. 5(g); 10 V.S.A. § 8504(h).

In its analysis, the Court gives prior decisions of the former Environmental Board "the same weight and consideration" as its own prior decisions. 10 V.S.A. § 8504(m). In addition, because this appeal is de novo, as explained in relation to the parties' earlier motion to "supplement the record," there is no record and the parties are free to submit additional evidence that is material to the Court's decision.[4]

An Act 250 permit application for a subdivision of land, as contrasted with one for the construction of a project on the land, must nevertheless provide enough information for the District Commission to determine whether resources on the land must be assessed or analyzed under the Act 250 criteria for the project property as a whole, before the boundary lines are approved for the subdivision.[5] That is, the applicant must provide enough information about the property and its resources and characteristics to allow the District Commission to determine, for that particular subdivision, which resources or characteristics could be affected by the division or fragmentation of the land itself. See Re: New England Land Associates, No. 5W1046-EB-R, Revised Findings of Fact, Conclusions of Law, and Order, at 19–20 (Vt. Envtl. Bd. Jan. 7, 1992). Such information is necessary for the District Commission to decide under the Act 250 criteria whether to approve the lot lines proposed for the subdivision. Such information is necessary for the present proposal regardless of which Act 250 criteria

---

[4] Although the Court understands the Natural Resources Board's argument, at page 4 of its November 18, 2010 memorandum, that the Court should determine whether the applications "as they existed at the time of the Coordinator's decision" did not meet the completeness requirements, and that "[o]nly a determination of this question will result in this case having some precedential value in future controversies," the Court is required to decide the case before it and not to provide an impermissible advisory opinion.

[5] The Court notes that the "Act 250 Schedule B–Short Form" application form questions are oriented towards construction projects rather than subdivisions. The form of the questions may have contributed to the problem Applicants faced in responding to them accurately, but in a way that would also be useful to the District Commission's task of evaluating the subdivision.

might require review for any specific construction proposals made in the future by purchasers of the proposed lots. Id.

In the present case, it is therefore necessary to determine which Act 250 criteria could potentially be affected by the proposed drawing of lot lines and sale of the lots separate from one another, without regard to what those lots might be used for by their purchasers. This necessary identification says nothing about whether the subdivision should or should not be approved under those criteria; it only determines what is required to make the application complete.

Similarly, the fact that the property was reviewed under Act 250 in the 1990s for a hunting facility, office space, dog trails, a single family residence, or a home catering kitchen does not determine whether any of the resources or characteristics of the property might be affected by the currently proposed lot lines.

It is therefore not sufficient to state in the application that certain of the criteria are not implicated by the proposed lot lines ("N/A or "not applicable") simply because no construction or earth disturbance is now proposed. If the resources or characteristics of the property are present, the particular criteria apply, even if the answer is that the proposal will not have an effect on the resource. That is, the application must simply provide the information to allow the lot lines to be evaluated for their effect or absence of effect on the applicable resource.

The remainder of this decision identifies those sections of the application raising issues potentially affected by the mere division of the property into multiple ownership. Applicants must provide additional information to enable the District Commission to evaluate the application for certain of the Act 250 criteria, as discussed below. The additional information may be as simple as stating "none" rather than "not applicable," or it may require more information such as the agricultural soils map already provided by Applicants. The Court must leave it to the District Coordinator in the first instance to evaluate the revised application according to the principles stated in this decision.

6

The criteria that are not discussed require no supplemental information.

Criterion 1(B) Waste Disposal, subsection (a) as to sewage disposal; and Criteria 2 & 3 as to Water Supply:

Although no sewage disposal or new water supply is proposed by the subdivision, the application should clarify that Applicants have now obtained state potable water supply and wastewater disposal system permits, explain Applicants' position that they were obtained solely to satisfy the municipal subdivision requirements, and verify if Applicants nevertheless continue to propose no sewage disposal or new water supply for the subdivision.

Criterion 1(B) Waste Disposal; subsection (e) as to stormwater:

Even though the drawing of lot lines does not change the disposal of stormwater runoff from the site, the application nevertheless must answer how stormwater flows on the site as a whole and how it will be disposed after the subdivision. That is, especially given the runoff channel extending from east to west across McBride Parcel 2, the application must show how the separate ownership of that parcel and the placement of the lot lines will or will not affect the flow of stormwater runoff from the other parcels.

Criterion 1(D) Floodways:

As with stormwater, although no construction is proposed, the application must demonstrate, especially given the runoff channel extending from east to west across McBride Parcel 2, how the separate ownership of that parcel and the placement of the lot lines will or will not affect the health, safety, and welfare of the public or of riparian owners during flooding.

Criterion 1(E) Streams:

The application answered that the proposed subdivision, that is, the location of the lot lines, would not disturb any stream or stream bank. The application form does not require further information.

Criterion 1(G) Wetlands:

Similarly, the application answered that the project tract contained no wetlands. The application form does not require further information.

Criterion 8(A) Wildlife and Endangered Species:

As to (a)—whether the project tract includes any necessary wildlife habitat or endangered species—the application answered "N/A, no disturbance proposed." However, as this is an inquiry as to whether the property itself contains those resources, regardless of whether any disturbance is proposed, that section of the application must be answered so that the District Commission can determine whether the layout of the lot lines, in and of itself, could have an effect on those resources.

Criterion 9(B) Primary Agricultural Soils:

As Applicants may have recognized by preparing an agricultural soils map for each of the two subdivisions and by obtaining a letter from the Agency of Agriculture, Food and Markets, the statutory agricultural soils analysis requires this information even for a subdivision of land, as parcel size, location, and access to roadways must be analyzed under Criterion 9(B).[6] It is not sufficient for the application to say that the proposed auction will result in the sale of all of the property and that the soils will not be affected. Rather, the proposed lot lines must themselves be analyzed by the District Commission to determine whether or not primary agricultural soils will be affected by those proposed lot lines.

---

[6] See 10 V.S.A. §§ 6001(15) (defining primary agricultural soils), 6086(a)(9)(B) (establishing standards for review of projects located on primary agricultural soils), 6093 (describing appropriate mitigation for projects located on primary agricultural soils); see, e.g., In re Village Assocs. Act 250 Land Use Permit, 2010 VT 42A, ¶¶ 9–15, 23 (applying Act 250 Criterion 9(B)); In re Brosseau/Wedgewood Act 250 PRD Application, No. 260-11-08 Vtec, slip op. at 5–10 (Dec. 8, 2010) (Wright, J.).

Criteria 9(D) & (E) Earth Resources:

Under subsection (a), the application did not check either the box for "yes" or the box for "no" in answering whether there are any mineral or earth resources on the site with a high potential for extraction. An answer to this question is required, even if no such resources are present on site, or if they are present but the potential for their extraction is not high. The application form does not require further information as to subsections (b) or (c).

Criterion 10 Local and Regional Plans:

Subsection (b), which asks whether local approvals or permits have been obtained, was checked "no" at the time of the original application and should be updated to reflect the municipal subdivision permit for the two subdivisions.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both parties' Motions for Summary Judgment are resolved as discussed above, concluding this appeal. Applicants may supplement their applications as discussed in this decision, so that the District Coordinator can rule them to be complete and the application can proceed on its merits before the District Commission as provided in Act 250 Rule 10.

Done at Berlin, Vermont, this 23rd day of February, 2011.

_____
Merideth Wright
Environmental Judge

9