**Louis W. and Sylvia V. Ragosta v. Allen S. Wilder, Jr.**

[592 A.2d 367]

No. 88-464

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed April 26, 1991

*Richard I. Burstein* and *Michael J. Andrews*, Law Clerk (On the Brief), Randolph, for Plaintiffs-Appellees.

*Peter J. Monte* of *Young, Monte & Lyford*, Northfield, for Defendant-Appellant.

**Peck, J.** Defendant appeals from a judgment ordering him to convey to plaintiffs a piece of real property known as "The Fork Shop." Defendant argues that the court improperly found that a binding contract existed and that it misapplied the doctrine of equitable estoppel. He also contends that the ruling cannot be upheld under promissory estoppel principles since the court failed to examine the extent to which enforcement of defendant's promise to sell was required to prevent injustice. Because the trial court's ruling cannot stand on contract or equitable estoppel grounds and because the court's analysis of promissory estoppel is inextricably bound in its contractual analysis, we reverse and remand the cause for further proceedings consistent with the principles expressed herein.

In 1985, plaintiffs became interested in purchasing "The Fork Shop" from defendant, but preliminary negotiations be-

tween the parties were fruitless. In 1987, plaintiffs learned that defendant was again considering selling the "The Fork Shop," mailed him a letter offering to purchase the property along with a check for $2,000 and began arrangements to obtain the necessary financing. By letter dated September 28, 1987, defendant returned the $2,000 check explaining that he had two properties "up for sale" and that he would not sign an acceptance to plaintiffs' offer because "that would tie up both these properties until [there was] a closing." In the letter, he also made the following counter-offer:

> I will sell you the Fork Shop and its property as listed in book 35, at page 135 of the Brookfield Land Records on 17 April 1972, for $88,000.00 (Eighty-eight thousand dollars), at anytime up until the 1st of November 1987 that you appear with me at the Randolph National Bank with said sum. At which time they will give you a certified deed to this property or to your agent as directed, providing said property has not been sold.

On October 1st, the date plaintiffs received the letter, they called defendant. The court found that during the conversation plaintiffs told defendant that "the terms and conditions of his offer were acceptable and that they would in fact prepare to accept the offer." Defendant assured plaintiffs that there was no one else currently interested in purchasing "The Fork Shop."

On October 6th, plaintiffs informed defendant that they would not close the sale on October 8th as discussed previously but that they would come to Vermont on October 10th. On October 8th, defendant called plaintiffs and informed them that he was no longer willing to sell "The Fork Shop." The trial court found that, at that time, defendant was aware plaintiffs "had processed their loan application and were prepared to close." Plaintiffs informed defendant that they would be at the Randolph National Bank at 10:00 a.m. on October 15th with the $88,000 purchase price and in fact appeared. Defendant did not. Plaintiffs claim they incurred $7,499.23 in loan closing costs.

Plaintiffs sued for specific performance arguing that defendant had contracted to sell the property to them. They alleged moreover that defendant knew they would have to incur costs to

obtain financing for the purchase but assured them that the sale would go through and that they relied on his assurances.

The trial court concluded that defendant "made an offer in writing which could only be accepted by performance prior to the deadline." It concluded further that defendant could not revoke his offer on October 8th because plaintiffs, relying on the offer, had already begun performance and that defendant should be estopped from revoking the offer on a theory of equitable estoppel. It ordered defendant to convey to plaintiffs "The Fork Shop" for $88,000. This appeal followed.

## I.

Plaintiffs claim that defendant's letter of September 28, 1987 created a contract to sell "The Fork Shop" to them unless the property was sold to another buyer. Rather, defendant's letter contains an offer to sell the property for $88,000, which the trial court found could only be accepted "by performance prior to the deadline," and a promise to keep the offer open unless the property were sold to another buyer. Defendant received no consideration for either promise. In fact, defendant returned plaintiffs' check for $2,000 which would have constituted consideration for the promise to keep the offer open, presumably because he did not wish to make a firm offer. Thus, the promise to keep the offer to sell open was not enforceable and, absent the operation of equitable estoppel, defendant could revoke the offer to sell the property at any time before plaintiffs accepted it. See *Buchannon v. Billings*, 127 Vt. 69, 75, 238 A.2d 638, 642 (1968) ("An option is a continuing offer, and *if supported by a consideration*, it cannot be withdrawn before the time limit.") (emphasis added).

Plaintiffs argue that the actions they undertook to obtain financing, which were detrimental to them, could constitute consideration for the promise to keep the offer to sell open. Their argument is unconvincing. Although plaintiffs are correct in stating that a detriment may constitute consideration, they ignore the rule that "[t]o constitute consideration, a performance or a return promise must be bargained for." Restatement (Second) of Contracts § 71(1) (1981). "A performance or return promise is bargained for if it is sought by the promisor in ex-

change for his promise and is given by the promisee in exchange for that promise." *Id.* at § 71(2). Plaintiffs began to seek financing even before defendant made a definite offer to sell the property. Whatever detriment they suffered was not in exchange for defendant's promise to keep the offer to sell open.

The trial court ruled that the offer to sell "The Fork Shop" could only be accepted by performance but concluded that in obtaining financing plaintiffs began performance and that therefore defendant could not revoke the offer to sell once plaintiffs incurred the cost of obtaining financing. Section 45 of the Restatement (Second) of Contracts provides that "[w]here an offer invites an offeree to accept by rendering a performance and does not invite a promissory acceptance, an option contract is created when the offeree tenders or begins the invited performance or tenders a beginning of it." However, "[w]hat is begun or tendered must be part of the actual performance invited in order to preclude revocation under this Section." *Id.* at comment f.

■ Here, plaintiffs were merely engaged in preparation for performance. The court itself found only that "plaintiffs had changed their position in order to tender performance." At most, they obtained financing and assured defendant that they would pay; plaintiffs never tendered to defendant or even began to tender the $88,000 purchase price. Thus, they never accepted defendant's offer and no contract was ever created. See *Multicare Medical Center v. State Social & Health Services,* 114 Wash. 2d 572, 584, 790 P.2d 124, 131 (1990) ("under a unilateral contract, an offer cannot be accepted by promising to perform; rather, the offeree must accept, if at all, by performance, and the contract then becomes executed").*

## II.

Defendant claims next that the court was not justified in applying equitable estoppel in this case. We agree.

---

* Because defendant specified that the manner of acceptance would be performance, plaintiffs' argument that they accepted defendant's offer over the telephone must fail. In fact, plaintiffs admitted in their depositions that they were very worried that the property would be sold to someone else prior to closing. Thus, they should have understood that they had no enforceable contract until closing.

One who invokes the doctrine of equitable estoppel has the burden of establishing each of its constituent elements. Four essential elements must be established: first, the party to be estopped must know the facts; second, the party being estopped must intend that his conduct shall be acted upon or the acts must be such that the party asserting the estoppel has a right to believe it is so intended; third, the latter must be ignorant of the true facts; and finally, the party asserting the estoppel must rely on the conduct of the party to be estopped to his detriment.

*Fisher v. Poole*, 142 Vt. 162, 168, 453 A.2d 408, 411–12 (1982) (citations omitted).

██ Equitable estoppel is inapplicable here because there were no facts known to defendant but unknown to plaintiffs. Plaintiffs cannot have acted on an understanding that defendant would definitely convey the property to them. On its face, defendant's offer stated only that he would convey the property to plaintiffs if he did not convey it to another party first. The trial court acknowledged that if defendant had sold "The Fork Shop" to another party plaintiffs would not have been entitled to relief. Thus, plaintiffs had no assurance that defendant would definitely convey the property to them even if on October 1st defendant told them that there was no one else interested in buying the property at that time. Moreover, plaintiffs engaged in obtaining financing for the purchase even before defendant made any offer to them whatsoever. They understood, at the time they obtained financing for the transaction, that they were assuming a risk that they would be unable to purchase the property in question. Since the plaintiffs had not tendered performance and did not establish the elements for the application of equitable estoppel, defendant was entitled to withdraw his offer when he did.

### III.

██ In the course of analyzing the case under part performance and equitable estoppel theories, the trial court cited promissory estoppel principles. It noted, "Plaintiffs relied on the conduct of the Defendant to their detriment when they prepared for and tendered performance" and concluded that de-

fendant's conduct induced plaintiffs to begin performance by obtaining financing.

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) of Contracts § 90(1). This principle is distinct from part performance since the action or forbearance involved need not constitute part performance. While the court's order cannot be upheld under a part performance theory, its ruling may be appropriate on promissory estoppel grounds. We cannot affirm the order on those grounds, however, because the trial court, in ruling that the promise must be enforced, erroneously relied on a part performance theory. Cf. *Price v. Price*, 149 Vt. 118, 122, 541 A.2d 79, 82 (1987) (order must be reversed and remanded where court may have relied on inappropriate considerations for its ruling). Under promissory estoppel, plaintiffs are entitled to enforcement of defendant's promise only if the promise induced them to take action "of a definite and substantial character," and if "injustice [*can*] *be avoided only* by enforcement of the promise." *Stacy v. Merchants Bank*, 144 Vt. 515, 521, 482 A.2d 61, 64 (1984) (emphasis added) (citing Restatement (Second) of Contracts § 90).

On remand the court shall consider the case under promissory estoppel only and determine what remedy, if any, is necessary to prevent injustice. In making this determination the court should consider the fact that plaintiffs incurred the expense of obtaining financing although they could not be certain that the property would be sold to them.

Because we reverse, we do not address defendant's claim that specific performance was an inappropriate remedy or plaintiffs' claim that they are entitled to the interest which has accrued on the purchase price since the date of the trial court's decision.

*Reversed and the cause remanded for further proceedings consistent with the principles expressed herein.*