## State of Vermont v. Robert D. Delaney

[598 A.2d 138]

No. 89-580

Present: **Allen, C.J., Gibson and Morse, JJ., and Cheever, Supr. J. and Peck, J. (Ret.), Specially Assigned**

Opinion Filed August 9, 1991

248

*Jeffrey L. Amestoy*, Attorney General, and *William E. Griffin*, Chief Assistant Attorney General, Montpelier, for Plaintiff-Appellant.

*James P. W. Goss* and *Peter W. Hall* of *Abell, Kenlan, Schwiebert & Hall, P.C.*, Rutland, for Defendant-Appellee.

**Gibson, J.** The State, which seeks specific performance of an alleged contract to sell certain land formerly owned by defendant, appeals from summary judgment in his favor and the denial of its motions for summary judgment and a preliminary injunction. Defendant cross-appeals the denial of his motion for sanctions. We affirm.

## I.

Defendant is trustee for a group of individuals who, in the summer of 1988, put up for sale a 3,135-acre parcel of land adjoining Willoughby State Forest. During the fall of 1988 and winter of 1989, the Nature Conservancy made three different offers for the land, all of which were rejected. The Nature Conservancy was acting, at least in part, as an agent for the State.

On January 30, 1989, defendant's broker told John Roe, director of land protection at the Nature Conservancy, that the land was to be sold to the Dotolis for $1.2 million on February 1,

1989. This information was passed on to State officials and, in response, Governor Kunin telephoned defendant that same evening. She confirmed that the price was $1.2 million and requested defendant not to sell the property to a third party because the State wanted to purchase it. Defendant declined the governor's request, stating that he "was not interested in that because [he] didn't believe the state was in a position to consummate any kind of a deal" in the time before the scheduled sale to the Dotolis.

At about that time, the Nature Conservancy decided it would advance the purchase money for the property if the Legislature adopted a resolution in support of the purchase. With this in mind, the governor decided to sponsor such a resolution and, on January 31, again telephoned defendant, this time reading the text of the draft resolution to him. The draft stated that it was the intention of the State to appropriate $750,000 toward the purchase price of the land, but did not set forth the full purchase price. Defendant suggested that a reference to the full purchase price be added so there would be no misunderstanding. This was done.

A few hours later, defendant called the governor's office and left a message to the effect that the governor was "off the hook for another week." In response, the governor called defendant, and according to her affidavit, defendant "offered and agreed to give the State of Vermont until February 8, 1989 to commit to the purchase of the property at the agreed upon price. In that same conversation, [defendant] stated that he had always preferred to sell the property to the State." Defendant's recollection of the conversation is somewhat different. In his deposition, he stated that he told the governor that the State "had another week to do whatever they wanted to do" and that "[i]f they had a viable contract I saw that was right I told her I would consider it." The joint resolution passed the Senate on January 31, 1989 and the House on February 3, 1989.

On February 2, the Nature Conservancy telefaxed a signed purchase and sale agreement to defendant. The next day, John Roe telephoned defendant on behalf of the Nature Conservancy to discuss the document. Defendant said that, although the document looked perfectly acceptable, he wanted to speak with a real estate attorney before giving final approval. After being

pressed for an appointment to sign the document, defendant said he would check his partners' schedules and call back on Monday, February 6. Defendant did not indicate there was any change in the February 8 deadline.

On February 6, defendant called the Nature Conservancy, reached Robert Klein, its Vermont director, and informed him that the property was being sold to the Dotolis. After Klein expressed surprise, defendant voiced several objections to the Nature Conservancy's proposed purchase and sale agreement. Klein said they could all be accommodated. Defendant nevertheless ended the conversation and, by letter dated February 6, informed the governor that the property was being sold to a third party, "even though the Nature Conservancy seemed to have everything pretty well in line to be able to go to contract tomorrow."

The State immediately initiated this suit and filed a motion for a preliminary injunction, seeking to restrain defendant from selling the property to the Dotolis. The State argued it had entered into a binding contract to purchase the property from defendant prior to the agreement between defendant and the Dotolis. The trial court denied the motion, holding that the State had not established a reasonable likelihood of prevailing on the merits. The State's motion for reconsideration was also denied, and the sale from defendant to the Dotolis was completed. Subsequently, the State requested specific performance under several contractual theories, both parties filed motions for summary judgment, and defendant filed a motion for sanctions. The court denied the State's motion for summary judgment, granted defendant's motion for summary judgment, and denied defendant's motion for sanctions.

On appeal, the State argues that the court erred in its summary judgment rulings.[1] Defendant cross-appeals the denial of sanctions.

---

[1] The State also contends that the trial court erroneously denied its motion for a preliminary injunction. This issue is moot, however, because the State's motion for a preliminary injunction requested that defendant be enjoined from selling the property to the Dotolis, an event that took place some time ago. See *Doria v. University of Vermont*, 156 Vt. 114, 117–18, 589 A.2d 317, 319 (1991) (request for injunctive relief moot as election was over and defendant's interest in a pre-election poll was no longer "legally cognizable");

## II.

■ The State advances two contractual arguments: (1) its part performance of an offer from defendant created an option contract for sale of the property, and (2) it entered into a contract for sale of the property with defendant before defendant sold the property to the Dotolis.[2] We are not persuaded by either argument and conclude that the trial court did not err by granting defendant's motion for summary judgment and denying the State's motion for summary judgment.

■ Initially, we set out the law applicable to both arguments. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, after giving the benefit of all reasonable doubts and inferences to the opposing party. *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 48, 582 A.2d 123, 125 (1990); V.R.C.P. 56(c). Where both parties seek summary judgment, each party receives this benefit when the opposing party's motion is being considered. *Toys, Inc.*, 155 Vt. at 48, 582 A.2d at 125. On appeal, the same summary judgment standard serves as our standard of review. *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 520, 496 A.2d 154, 157 (1985). "'The question whether there was a contract between the parties does not depend alone upon the specified facts found but also upon the reasonable inferences to be drawn from them,'" the "'situation and purpose of the parties,'" and the "'subject matter and course of the negotiations.'" *Toys, Inc.*, 155 Vt. at 50, 582 A.2d at 126–27 (quoting *Ackerman v. Carpenter*, 113 Vt. 77, 81, 29 A.2d 922, 925 (1943)).

### A.

The State argues that its motion for summary judgment

---

*In re Moriarty*, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991) (a matter is moot if effective relief can no longer be granted); *Winton v. Johnson & Dix Fuel Corp.*, 147 Vt. 236, 239, 515 A.2d 371, 373 (1986) (change in facts can render an issue moot).

[2] The State also makes several arguments regarding the Statute of Frauds, which, in view of our disposition of the contractual issues, we do not address except to say, with respect to defendant's motion for sanctions, that they are not frivolous.

should have been granted or, alternatively, defendant's motion denied, because an option contract was created between the defendant and the State by the State's part performance of defendant's offer. For support, the State cites to Restatement (Second) of Contracts § 45 (1981). Under the State's theory, defendant's offer of a unilateral contract consisted of defendant's (1) participation in the drafting of the resolution, (2) assurance that he wanted to sell the property to the State, (3) statement that he would not sell to a third party before February 8, 1989, and (4) promise that he would give the State until then to make a final commitment. The State further contends that it began to complete the invited performance by drafting, debating, and enacting the joint resolution, and negotiating through the Nature Conservancy with defendant for a deposit amount, closing date, and draft contract.

An argument analogous to the State's argument was made, and rejected, in *Ragosta v. Wilder*, 156 Vt. 390, 592 A.2d 367 (1991). In *Ragosta*, the defendant had told the plaintiffs—the prospective purchasers—that he would sell his property to them if they appeared at a designated place before a certain time with the purchase money, provided the property was not sold to someone else in the meantime. The defendant later assured the plaintiffs that no one else was currently interested in purchasing the property. The plaintiffs obtained a loan and incurred certain costs in attempting to acquire the property. The trial court ruled that obtaining financing constituted the beginning of performance, apparently relying on Restatement (Second) of Contracts § 45. We reversed, holding that "plaintiffs were merely engaged in preparation for performance." *Id.* at 394, 592 A.2d at 370; cf. *Chomicky v. Buttolph*, 147 Vt. 128, 131–32, 513 A.2d 1174, 1176 (1986) (part-performance exception to Statute of Frauds not satisfied by making financing arrangements).

This case is governed by *Ragosta* and is less compelling. Defendant told the State on several occasions that he was interested only in a "solid, viable contract." The joint resolution did not appropriate any money; it merely expressed an "intention to proceed with the State's appropriation," which was set forth as $750,000 of the $1.2 million purchase price. The remainder of the purchase price was to be raised privately by the Nature

Conservancy during the spring and summer of 1989. Thus, the resolution could not constitute the beginning of performance. *Ragosta*, 156 Vt. at 394, 592 A.2d at 370 (obtaining loan did not constitute beginning of performance). Nor do the Nature Conservancy's attempts to negotiate certain other terms, such as the deposit amount, closing date, and the date when payment would be made, help the State's argument. Rather, the need to negotiate additional material terms in order to reach an agreement indicates that defendant did not make an offer. See Restatement (Second) of Contracts § 33(3) (1981) ("The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance."); *id.* comment c ("The more terms the parties leave open, the less likely it is that they have intended to conclude a binding agreement."); see also *Benya v. Stevens & Thompson Paper Co.*, 143 Vt. 521, 526, 468 A.2d 929, 931 (1983) (where financing was an integral part of contract, failure to agree on it prevented contract formation).

█ The evidence discloses, at best, an attempt by the State to convince defendant that it was serious about acquiring the property. In the absence of extraordinary circumstances, not present here, efforts to obtain financing will not constitute part performance of a unilateral offer to sell real estate.

## B.

In further opposition to defendant's motion for summary judgment, the State argues that defendant "manifested a willingness to enter into a bargain"—that is, he made an offer—by telling the governor that the joint resolution should include a reference to the full purchase price, by later telephoning to say that the State had until February 8, 1989, to make a commitment, and by stating that he preferred to sell to the State. Further, the offer was accepted by the purchase and sale agreement telefaxed by the Nature Conservancy to defendant on February 2, 1989.[3]

---

[3] This argument underlies the State's contention that the trial court erred by denying the preliminary injunction. As we previously noted, insofar as the motion for a preliminary injunction is concerned, the argument is moot. In a

 "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981); see also 1 A. Corbin, Corbin on Contracts § 11, at 23 (1963) ("An offer is an expression by one party of his assent to certain definite terms, provided that the other party involved in the bargaining transaction will likewise express his assent to the identically same terms."). It is axiomatic that preliminary negotiations do not constitute an offer. *Channel Home Centers v. Grossman*, 795 F.2d 291, 298 (3d Cir. 1986); Restatement (Second) of Contracts § 26 (1981).

 In this case, defendant told the governor what price the State needed to match, suggested that it be included in the draft resolution, and indicated how much time the State had to put together an offer. The governor, in her affidavit, states that defendant told her he would rather sell to the State and that the State must "commit to the purchase of the property" before February 8, 1989. These facts establish, at best, that defendant was inviting the State to make an offer. See *Ferrero Constr. Co. v. Dennis Rourke Corp.*, 311 Md. 560, 577–78, 536 A.2d 1137, 1145 (1988) (letter reciting terms of an acceptable offer and setting deadline for submission of contract "in order to be considered" was an invitation to submit an offer; offer submitted in response was not an acceptance). Additionally, the joint resolution did not commit the State to anything; rather, it merely expressed an intention to appropriate certain funds. Thus, it could not form the basis for a contract. See *Foster & Kleiser v. Baltimore County*, 57 Md. App. 531, 537–38, 470 A.2d 1322, 1325–26 (1984) (negotiations were preliminary where further action by government body was legally required). In short, defendant said and did nothing that could be construed reasonably as a binding commitment to sell the property to the State. See *Bemis v. Lamb*, 135 Vt. 618, 620, 383 A.2d 614, 617 (1978) ("We cannot make a contract where none is shown to have been made

---

footnote, however, the State appears to cross-reference the contractual argument's merits to the summary judgment issues. Although the cross-reference may well be inadequate, we give the State the benefit of the doubt and address the merits of this issue.

by the parties."). Because defendant never agreed to the February 2, 1989, purchase and sale agreement, which was telefaxed to him by the Nature Conservancy, there was no contract. See *Ferrero Constr. Co.*, 311 Md. at 578, 536 A.2d at 1145 (no contract where letter was an invitation for an offer and the response, which was the initial offer, was never accepted).

## III.

 Defendant cross-appeals the trial court's denial of his motion for sanctions. He argues that the State failed to make a reasonable inquiry into the facts and the law, as evidenced by its frequent change of legal theories and continued pursuit of the action after it should have realized that defendant had never signed a writing that would satisfy the Statute of Frauds. Defendant's argument focuses on the "reasonable inquiry" requirement of V.R.C.P. 11, which became part of the rule in 1984, following the 1983 federal Rule 11 amendment.[4] See Reporter's Notes to 1984 amendment to V.R.C.P. 11. Although there may be subjective components, the sufficiency of the signer's inquiry is tested principally by what was objectively reasonable under the circumstances. See 5A C. Wright & A. Miller, Federal Practice and Procedure § 1335, at 60–63 (2d ed. 1990). "Sanctions are not likely to be imposed, however, on a matter of first impression, even if there is contrary authority in other courts, or when the law is not clear." *Id.* at 69 (footnotes omitted). Absent an abuse of discretion, we will not reverse a trial court's determination of a Rule 11 motion. See *Addison County Community Action v. City of Vergennes*, 152 Vt. 161, 169, 565 A.2d 233, 237–38 (1989); see also *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409, 110 S. Ct. 2447, 2463 (1990) (adopting abuse of discretion as standard of review for Fed. R. Civ. P. 11).

---

[4] V.R.C.P. 11 provides in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, summons, writ, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

In this case, the State argued that the Statute of Frauds had been satisfied and, alternatively, that defendant was equitably estopped from asserting it. Given our disposition of the contractual issues, we did not need to discuss the Statute of Frauds issue. For the Rule 11 appeal, we have reviewed it and conclude that the State's argument is not frivolous. Nor are the State's contractual theories, which we addressed above, frivolous, particularly given the sparsity of Vermont law on them at the time this suit was prosecuted. *Ragosta v. Wilder*, which we discussed above, was issued after oral argument in this case. The trial court did not abuse its discretion by denying defendant's motion for sanctions.

*Affirmed.*