Harland A. MACIA, III, d/b/a
Catamount Software,
Plaintiff,

v.

MICROSOFT CORPORATION, Intuit,
Inc., and Meca Software, LLC,
Defendants.

No. 2:00–CV–299.

United States District Court,
D. Vermont.

June 21, 2001.

David Seth Putter, Putter & Edson, LLP, Montpelier, VT, Markus Brakhan, Esq., The Law Office of Markus Brakhan, Burlington, VT, for Harland A Macia, III, d/b/a Catamount Software.

John T Sartore, Paul, Frank & Collins, Burlington, VT, John Thomas Brown, Esq., Demetra Merikas, Esq., Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL, Linda Norman, Esq., Microsoft Corporation USA, Redmond, WA, for Microsoft Corporation.

Walter Edmond Judge, Jr., Esq., Eric Andrew Poehlmann, Esq., Downs, Rachlin & Martin, P.C., Burlington, VT, for Intuit, Inc.

Shapleigh Smith, Jr., Esq., Dinse, Knapp & McAndrew, P.C., Burlington, VT, for Meca Software, LLC.

## OPINION AND ORDER

SESSIONS, District Judge.

In this case asserting trademark infringement and unfair competition claims under the Lanham Act and related state law, Defendant Intuit, Inc. ("Intuit") has moved to dismiss the counts asserted against it for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons that follow, Intuit's motion is granted in part and denied in part.

### I. Factual Background

The following facts are derived from the Amended Complaint and taken as true for purposes of this motion to dismiss. Plaintiff Harland A. Macia, III, doing business as Catamount Software ("Catamount"), is a developer and marketer of computer software with a principal place of business in Essex, Vermont. Intuit is a developer and marketer of computer software incorporated under the laws of Delaware, having a principal place of business in Mountain View, California.

Catamount has developed particular expertise in programming for handheld computers, and offers software for sale from its Vermont headquarters, available online at *www.catamount.com*. Using the name "PocketMoney," Catamount developed and released an accounting program for handheld computers. It sold its first copy of "PocketMoney" in June, 1994. PocketMoney allows a user to track and manage various cash, bank and credit card account transactions.

Catamount applied for registration of the mark "PocketMoney" in the United States, Vermont, Japan, Switzerland and the European Union. The mark has been granted registration in Vermont, Switzerland, and the European Union. Catamount has used the mark "PocketMoney"

continuously in interstate and international commerce for more than six years.

Intuit filed an Intent to Use ("ITU") application for the mark "Pocket Money" on February 7, 1995. An ITU applicant must verify that it has a bona fide intention to use the mark in commerce on or in connection with goods or services listed in the application. *See* 15 U.S.C.A. § 1051(b); 37 C.F.R. § 2.34(a)(2)(i) (2001). Between 1996 and 1999 Intuit sought and was granted several extensions of its ITU application by the United States Patent & Trademark Office ("PTO").

Catamount wrote Intuit a letter dated January 30, 1998, asserting its trademark rights. After several communications between the parties, Intuit represented that it would abandon its application. On February 17, 1998 Catamount filed its application for trademark registration with the PTO. On April 2, 1998, Intuit obtained its third extension of its application. Catamount protested, and Intuit again represented that it would abandon its application. But on September 3, 1998, Intuit obtained its fourth extension.

On November 17, 1998 the PTO denied approval of the Catamount application, finding that the Intuit application was a "Prior Pending Mark." The PTO, at Catamount's request, suspended its application, pending resolution of the Intuit ITU application. Intuit obtained yet another extension in March 1999, but continued to tell Catamount that it would abandon its application. On July 19, 1999, Intuit filed an "explicit abandonment" of its Pocket Money application.

The Catamount application for registration was approved for publication on February 3, 2000. As of the filing of this action, Catamount had not perfected the registration of its trademark in the United States.

Catamount's Amended Complaint brings ten counts against three Defendants: Microsoft Corporation, Meca Software, LLC, and Intuit. Four of the ten counts are asserted against Intuit: Counts II, V, IX and X. Count II alleges infringement by Intuit of Catamount's unregistered trademark "PocketMoney." Specifically it claims that Intuit's use of the term "Pocket Money" in its requests for extensions of its application for trademark registration was a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). In Count V Catamount alleges that the same conduct violated Section 2530 of Title 9 of the Vermont Statutes Annotated.

Count IX asserts a claim against Intuit for slander of title under Vermont common law. Specifically it charges that Intuit knowingly, willfully and maliciously made false representations to the PTO that it had the right to register the trademark "Pocket Money" and a bona fide intent to use the mark.

Count X asserts a promissory estoppel claim under Vermont common law against Intuit. Catamount charges that Intuit promised to abandon its application and failed to honor its promises, and that Catamount relied on those promises to its detriment.

## II. *Discussion*

### A. *Standard*

 A complaint will not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "[B]ald assertions and conclusions of law will not suffice to state a claim," but a district court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those al-

legations in the light most favorable to plaintiff, and construe the complaint liberally." *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000).

### B. *Lanham Act: "Use in Commerce"*

Section 1125(a)(1)(A) of Title 15 of the United States Code authorizes a civil action against any person who

> in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, ... which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A). Section 1127 defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. In connection with goods, a mark will be considered in use in commerce if it is placed on the goods or their containers or on documents associated with the goods or their sale, and the goods are sold or transported in commerce. *Id.*

■ The Lanham Act was "intended to make actionable the deceptive and misleading use of marks and to protect persons engaged in ... commerce against unfair competition." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). As the statutory language indicates, "the central inquiry [in a Lanham Act infringement claim] is whether the use of a marking is likely to cause *consumer* confusion." *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1038 (2d Cir. 1992) (emphasis supplied). *See also Nabisco, Inc. v. Warner–Lambert Co.*, 220

F.3d 43, 45 (2d Cir.2000) (trademark infringement claim requires proof that use is likely to confuse consumers); *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 80 (2d Cir.1994) (consumer confusion is hallmark of any trademark infringement claim).

■ The Amended Complaint does not allege that Intuit made any use in commerce of PocketMoney or any similar mark. The only alleged use of the mark is Intuit's filing of an ITU trademark application. Unless and until Intuit uses the mark in the course of trade, to identify actual goods for sale or transport, it cannot be subject to suit for trademark infringement under § 1125(a). *See, e.g., Kusek v. Family Circle, Inc.*, 894 F.Supp. 522, 532 (D.Mass.1995) (mere registration does not amount to "use" of mark); *Cognotec Servs. Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 862 F.Supp. 45, 50–51 (S.D.N.Y. 1994) (bank's internal distribution of allegedly infringing materials failed to state claim of Lanham Act violation where no materials were disseminated "in commerce"); *Tubeco, Inc. v. Crippen Pipe Fabrication Corp.*, 402 F.Supp. 838, 847–48 (E.D.N.Y.1975) (because Lanham Act was directed against false representations of goods in interstate commerce, motion to dismiss granted where no sales of goods in commerce took place), *aff'd*, 538 F.2d 314 (2d Cir.1976).

Because Catamount has failed to allege that Intuit used PocketMoney or any similar term in commerce, Count II of its Amended Complaint must be dismissed.

### C. *Trademark infringement claim under Vermont law*

Catamount has also asserted a trademark infringement claim against Intuit under Vermont law. Section 2530(1) of Title 9, Vermont Statutes Annotated, provides that "[s]ubject to the provisions of section 2532 of this title, no person shall knowing-

ly and wilfully . . . [f]alsely make, counterfeit, imitate, sell, offer for sale, or in any way utter or circulate any trademark *which has been registered in accordance with the provisions of this subchapter.*" Vt. Stat. Ann. tit. 9, § 2530(1) (1993) (emphasis supplied).

■ Catamount alleges that by submitting extension requests to the PTO it imitated and uttered a Vermont-registered trademark. Assuming for the sake of argument that the elements of a trademark infringement claim under Vermont law do not include a "use in commerce" requirement as does the federal statute, Catamount still fails to state a claim. It is clear from the face of the Amended Complaint that Catamount obtained its trademark registration in Vermont on April 23, 1999. Am. Compl. ¶ 201. Prior to that date, any allegedly infringing conduct was not in violation of § 2530(1), given its prerequisite that the trademark have been registered in Vermont.

Intuit's ITU application was filed on February 7, 1995. Am. Compl. ¶ 88. It obtained extensions from the PTO on April 3, 1997, September 3, 1997, April 2, 1998, September 3, 1998 and March 25, 1999. *Id.,* ¶¶ 94, 96, 100, 102, 107. On July 19, 1999, Intuit filed an "explicit abandonment" of its ITU application. *Id.,* ¶ 112. Although Catamount argues that Intuit "imitat[ed] and utter[ed] representations to the Patent and Trademark Office, and concomitantly to the public," Pl.'s Response at 6, the Amended Complaint alleges no conduct occurring after April 23, 1999 which could support such a claim. Accordingly, Count V is dismissed for failure to state a claim upon which relief can be granted.

### D. *Slander of title*

#### 1. Preemption

■ Intuit has argued that the Lanham Act preempts Catamount's common law slander of title claim. The Lanham Act contains no express preemption of state common law causes of action. The Lanham Act may preempt state law by implication, however, if the state law is inconsistent with or frustrates the objectives of the federal law. *See Mobil Oil Corp. v. Va. Gasoline Marketers & Auto. Repair Ass'n, Inc.,* 34 F.3d 220, 226 (4th Cir.1994) (citing *La. Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 368, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986)).

■ "[W]here conflict is alleged between federal and state law, the specific purpose of the federal act must be ascertained in order to assess any potential erosion of the federal plan by operation of the state law." *Mariniello v. Shell Oil Co.,* 511 F.2d 853, 858 (3d Cir.1975). The purpose of the Lanham Act "is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; . . . to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks." 15 U.S.C. § 1127. Because the basic purpose of the Lanham Act is to protect trademark holders and the public, state law which arguably provides greater protection does not conflict with the Act, but complements it. *See Golden Door, Inc. v. Odisho,* 646 F.2d 347, 352 (9th Cir.1980).

■ This Court does not assume from Congressional silence on the matter that the Lanham Act was intended to supplant state common law causes of action to protect property rights in trademarks. *See also 20th Century Wear, Inc. v. Sanmark–Stardust Inc.,* 747 F.2d 81, 93 (2d Cir.1984)

(Lanham Act did not preempt state law of unfair competition); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 n. 3 (1st Cir.1980) (Lanham Act does not preempt states' ability to protect trademark rights; purpose of Act to protect public from confusing and deceptive trademarks and to provide security against misappropriation for trademark owners); *LeSportsac, Inc. v. K Mart Corp.*, 617 F.Supp. 316, 318 (E.D.N.Y.1985); *Hamilton v. Hertz Corp.*, 607 F.Supp. 1371, 1374 (S.D.N.Y.1985).

### 2. Statute of limitations

The parties agree that the three year statute of limitations for slander and libel actions applies to slander of title claims. *See* Vt. Stat. Ann. tit. 12 § 512(3) (1973 and Supp.2000). *But see Bull v. Pinkham Eng'g Assocs. Inc.*, 752 A.2d 26, 30 (Vt. 2000) (six year statute applies to actions seeking damages for economic loss in absence of claim of damage to personal property); *Fitzgerald v. Congleton*, 155 Vt. 283, 288, 583 A.2d 595, 598 (1990) (nature of harm suffered determines which statute of limitations governs); *Stevers v. E.T. & H.K. Ide Co.*, 148 Vt. 12, 13, 527 A.2d 658, 659 (1987) (damage to personal property suffered by act or default of another subject to three year statute of limitations of § 512(5)).

Catamount asserts that each extension request made by Intuit to the PTO constituted a separate slander of title. It does not dispute Intuit's contention that Catamount's slander of title claims based on the original ITU application and the first two extension requests are time-barred. It accurately notes that the third, fourth and fifth extension requests, made after Intuit had notice of Catamount's claim to exclusive rights in the mark, fall within the three year statute of limitations period.

Catamount's slander of title claims based on the original ITU application and the first two extension requests are conceded to be time-barred; its claims based on the post-August 1997 extension requests, assuming they state a claim upon which relief can be granted, are not time-barred.

### 3. Slander of title elements

The elements of the tort of slander of title are: (1) a false statement; (2) published by the defendant; (3) without justification or privilege; (4) made with malice; and (5) causing special damages to the plaintiff. *See* Restatement (Second) of Torts § 623A, 624 (1977). *See also Weaver v. Stafford*, 134 Idaho 691, 8 P.3d 1234, 1244 (2000); *Raymond v. Lyden*, 728 A.2d 124, 126 n. 6 (Me.1999); *Paidar v. Hughes*, 615 N.W.2d 276, 279–80 (Minn.2000); *Montecalvo v. Mandarelli*, 682 A.2d 918, 923 (R.I.1996). Catamount has adequately pled the elements of this tort, sufficient to withstand a motion to dismiss for failure to state a claim.

Catamount has alleged that Intuit made false statements to the PTO concerning its title to the mark and its bona fide intent to use the mark in its requests for extensions of the deadline by which to perfect its application for registration. Am. Compl. ¶¶ 247, 250–53. It has alleged malice, and the absence of privilege or justification. *Id.* ¶ 254, 260. As special damages, Catamount has alleged, among other things, that Intuit caused it to incur increased expenses in obtaining registration of its trademark, and caused the value of the mark to be lower than it otherwise would have been. *Id.* ¶ 259.

At a minimum, Catamount will have to prove that its "damages result[ed] from the 'slander' and not from other factors," in order to recover. *Gardner v. West–Col, Inc.*, 136 Vt. 381, 387, 392 A.2d 383, 386 (1978). The " 'chief characteristic of specialized damages is a realized loss,' "

such as a specific lost sale. *Maragos v. Union Oil Co. of Calif.*, 584 N.W.2d 850, 852 (N.D.1998) (quoting Prosser & Keeton on the Law of Torts § 128 (5th ed.1984)). " '[T]he trier of fact must be furnished data sufficient to determine damages without resort to mere speculation or conjecture.' " *Id.* (quoting *Johnson v. Monsanto Co.*, 303 N.W.2d 86, 95 (N.D.1981)). According to the majority view, special damages may also include "expenses incurred in removing the effects of the slander" (although not the costs of litigation in the action for slander of title itself). *Colquhoun v. Webber*, 684 A.2d 405, 410–11 (Me. 1996). *See also* Prosser & Keeton § 128; *Paidar*, 615 N.W.2d at 280.

At this stage in the litigation it may be difficult to see how Catamount will be able to prove damages to the trier of fact without resort to speculation or conjecture. Nevertheless, the special damages element of the tort has been adequately pled, as have the remainder of the elements of slander of title. The motion to dismiss is denied as to Count IX.

### E. *Promissory estoppel*

 According to the doctrine of promissory estoppel: " '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' " *Tour Costa Rica v. Country Walkers, Inc.*, 758 A.2d 795, 799 (Vt.2000) (quoting *Foote v Simmonds Precision Prods. Co.*, 158 Vt. 566, 573, 613 A.2d 1277, 1281 (1992)). Under Vermont law, "[t]he action or inaction taken in reliance on the promise must be 'of a definite and substantial character.' " *Id.* (quoting *Ragosta v. Wilder*, 156 Vt. 390, 396, 592 A.2d 367, 371 (1991)). "[T]he promisee must have detrimentally relied on the promise." *Id.*

 Catamount has alleged that it relied on Intuit's representations that it would abandon its application for federal registration of the mark "Pocket Money," and consequently forbore bringing an action against Intuit. The Court cannot say at this stage of the litigation that Catamount's reliance was unreasonable as a matter of law, or that holding off on legal action was inaction so indefinite and insubstantial as to fail to meet the requirements of detrimental reliance. *See, e.g., Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 80 (2d Cir.1996) (withholding submission of resignation letter could constitute detrimental reliance).

Whether enforcement of the promise, or rectifying the wrong,[1] is the only way of avoiding injustice in this case must also await factual development. Accordingly, Intuit's motion to dismiss the promissory estoppel claim (Count X) is denied.

### F. *Damages*

Catamount has demanded special damages and punitive damages in Counts IX and X, the counts remaining against Intuit. Those damages assertedly include damages due to the delay and increased expenses incurred in obtaining federal registration of the mark, and diminished value of the mark.[2] As noted in the discussion

---

1. The Vermont Supreme Court recently emphasized that specific performance is not the only remedy available in a promissory estoppel case. *See Tour Costa Rica v. Country Walkers, Inc.*, 758 A.2d 795, 801 n. 3 (2000). *See also Remes v. Nordic Group, Inc.*, 169 Vt. 37, 41, 726 A.2d 77, 80 (1999) (promissory estoppel damages should be discretely designed as corrective relief to rectify wrong committed in particular case).

2. Catamount appears not to dispute Intuit's contention that because treble damages are available to the holder of an unregistered

of slander of title, at this stage in the litigation the Court cannot hold as a matter of law that such damages are not recoverable.

### III. *Conclusion*

Defendant Intuit's Motion to Dismiss (Doc. 15) is granted in part and denied in part. The motion is granted as to Counts II and V, and denied as to Counts IX and X. Counts II and V are dismissed.

mark under the Lanham Act, Intuit cannot be held responsible for any decreased recovery from Microsoft and Meca if Catamount proves that Intuit caused delay in its federal trademark registration.