**STATE OF VERMONT**
**CALEDONIA COUNTY, SS.**

KATHERINE LAWSON & BRADLEY LAWSON,    :    Caledonia Superior Court
individually, and as parents and guardians of their    :
daughter, JORDAN LAWSON    :    Docket No. 195-9-97 Cacv

       :

    v.    :

    :

BROWN'S HOME DAY CARE CENTER, INC., and    :
LUCILLE M. NELSON & ROBERT NELSON, JR.    :

**ENTRY ORDER**

This case is before the Caledonia Superior Court on remand from the Vermont Supreme

Court. *See* Vt. Sup. Ct. No. 98-447, Entry Order dated April 16, 2001, reported at 12 Vt. L.W. 115.

The trial court had imposed a sanction against Attorney Duncan Kilmartin for publicly revealing

information from a confidential mediation session. The amount of the sanction was based upon the

estimated cost to the court of dealing with the documents that were filed and the related motions.

The Supreme Court ruled that the sanction would be an appropriate exercise of the court's inherent

powers, and Attorney Kilmartin would have had fair warning of the possibility of sanctions if, on

remand, the trial court finds that Mr. Kilmartin revealed the materials for an improper purpose or

motive or in bad faith. Without a factual determination of improper purpose or motive or bad faith

by the trial court, the sanction would be improper.[1]

---

[1] The inherent power of the court is not in issue. The Vermont Supreme Court has recognized that "Courts have inherent power to discipline the attorneys who practice before them." Van Eps v. Johnston, 150 Vt. 324, 326 (1988). The Supreme Court agreed with the trial judge's comments that:

> Courts are charged with the supervision of members of the bar as officers of the court. Courts control the calendar, and through it control the fair and efficient administration of justice to litigants. Courts must manage their own time and resources and establish priorities. Courts must instill respect in both litigants and litigators for the law and the legal process. To do all this, courts must have the power to sanction.

Van Eps at 327-28.

Prior to conducting a further hearing on remand, the court requested that Attorney Kilmartin, through counsel Robert Bent, submit a memorandum of law on the appropriate standards to be applied to the facts in evaluating "improper purpose or motive" and "bad faith." Attorney Bent filed his memorandum on October 22, 2001, and made a request to the Clerk by letter for a status conference prior to oral argument to clarify the issues. In lieu of convening a status conference, the court issues this Entry Order to clarify the issues and scope of the remand hearing that is scheduled in a separate Notice of Hearing.

The research of both Mr. Bent and the court shows that the standard for evaluating improper purpose or motive or bad faith is an objective rather than a subjective one.[2] The conduct under scrutiny is to be measured against what was objectively reasonable under all the circumstances[3] in determining whether it was motivated by an improper purpose or bad faith.[4]

---

[2] For example, within the Second Circuit, complaints for sanctions under Rule 11 are assessed according to an objective inquiry into whether any reasonable argument can be advanced to justify a filing. *See* Eastway Construction Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985). The Vermont Supreme Court has also approved of an inquiry under Rule 11 into "what was objectively reasonable under the circumstances," in State v. Delaney, 157 Vt. 247, 256 (1991) (citing 5A Wright & Miller, Federal Practice and Procedure § 1335, at 60-63 (2d ed. 1990)). While Rule 11 is not directly applicable, the standards and approach are instructive.

[3] While it is clear that the standard to be applied is an objective and not a subjective one, the standards for determining what constitutes "bad faith" or "improper purpose or motive"are less clear, and may vary depending on the circumstances. In relation to charges involving a lawyer's negligent or reckless failure to perform his or her responsibility as an officer of the court, as opposed to actions undertaken for the client's benefit, the Second Circuit has held that "sanctions may be justified absent a finding of bad faith given the court's inherent power 'to manage [its] own affairs so as to achieve the orderly and expeditions disposition of cases.'" United States v. Seltzer, 227 F.2d 36, 41 (2d Cir. 2000) (citations omitted). The Third Circuit has noted that a compensatory sanction is more easily justified than a punitive fine. Tying the sanction to the specific costs incurred provides both a nexus and a limit. Eash v. Riggins Trucking, Inc., 757 F.2d 557, 565 (3d Cir. 1985).

[4] Rule 11 cites non-exclusive examples of improper purpose as "to harass or to cause unnecessary delay or needless increase in the cost of litigation." V.R.C.P. 11(b)(1). Other examples could be to gain an unfair advantage in negotiations or to deprive an opposing party of effective representation by counsel

2

Attorney Kilmartin's claim is that he filed the confidential material "to disclose unethical conduct and/or potentially criminal conduct and to disqualify the opposing lawyer." Vt. Sup. Ct. Entry Order, 12 Vt. L.W. at 116.[5]

The record as of the end of the hearing on September 2, 1998 showed that Attorney Kilmartin repeatedly filed confidential material with the Superior Court, knowing that the material would become public, and without requesting that the confidential material be sealed. He did so while the

---

of choice. Bad faith could include a desire to vex an opposing attorney or to undermine the attorney-client relationship between opposing counsel and his client.

[5]The Motion filed by Attorney Kilmartin on July 2, 1998, was the first filing in which the confidential material was included. The relief requested was disqualification of opposing counsel. It combined a request to appeal an order denying a prior Motion to Disqualify Attorney Caldbeck (filed prior to the mediation session) with a new request to disqualify him for reasons arising out of the mediation session. "Motion for Permission to Appeal Collateral Final Order of June 19, 1998 denying defendant's Emergency Motion to Disqualify Attorney Caldbeck And To Call Attorney Caldbeck as a Witness and Suspend all Proceedings Pending Full Hearing On the Motion to Disqualify, [VRAP 5.1] Or In The Alternative, Suspend the Current Proceedings and Disqualify Attorney Caldbeck" filed July 2, 1998.

In the Memorandum filed September 1, 1998 by Attorney Bent on behalf of Attorney Kilmartin prior to the hearing on conduct and sanctions before the trial court, the purpose of Mr. Kilmartin's disclosure of confidential information was stated as "a concern by Atty. Kilmartin that one of the terms of the settlement proposal would require a violation of 13 V.S.A. §8, among other criminal laws." (Page 6). The Memorandum also states: "The most cited exception to general confidentiality relates to issues surrounding the reporting of crimes, the purpose of Attorney Kilmartin's filing with this court." (Page 7). In a footnote in the Memorandum, it is also argued that "the court had concurrent responsibility with the professional conduct board to consider allegations of improper conduct raised by litigants or counsel." (Page 8). It is further argued in the Memorandum that Attorney Kilmartin believed that opposing counsel's positions at the mediation session "were contrary to the criminal laws of the state of Vermont and could expose himself and client to liability, a demand which Kilmartin believed was wrong, improper and illegal" (Page 9).

At the hearing on September 2, 1998, Mr. Kilmartin's counsel argued that Mr. Kilmartin "was trying to flag to the court something which he believed was going on which was wrong." Transcript of hearing of September 2, 1998, pages 14-15. He further argued that an exception to confidentiality of mediation "is the perceived need to report the occurrence of a crime. Now, the point here is not whether that's—there was one committed or being committed or not, but it's the perceived need to make that report. There's a whole process that would have to go on to determine whether that was accurate or not." (Page 21)

3

parties were engaged in settlement negotiations in which he and his client continued to participate. It does not appear that he filed the material at the request of his client, or to protect his client from prejudice in any pending action in the forum.[6] Although Mr. Kilmartin has indicated that he was ethically obligated to report Mr. Caldbeck's misconduct, he has not explained why he was obligated to file such a report with the Superior Court in this case, as opposed to filing with the Professional Conduct Board.[7] The record does not indicate that Mr. Kilmartin filed any complaint with the Professional Conduct Board at any time, or that he discussed his concerns about possible criminal conduct with the State's Attorney. The pattern of conduct between the attorneys prior to the mediation session had been characterized by acrimony and personal attack. Mr. Kilmartin had filed a Motion to Disqualify Mr. Caldbeck on other grounds, which was not successful. Even if there were a reason for filing a Motion to Disqualify arising out of the mediation session, it is not apparent why he would have had to include details from the confidential mediation session, or alternatively why the Motion was not accompanied by a request to seal the confidential information, or why filing of confidential information was done repeatedly. Although Attorney Kilmartin has explained that this was done only after first attempting to file *ex parte*, an *ex parte* filing would not have shielded

---

[6] Co-counsel for Defendants did not join in the Motion filed by Attorney Kilmartin, and efforts at settling the case were not discontinued.

[7] According to DR 1-103(A), "A lawyer possessing unprivileged knowledge of a violaton of DR 1-102 shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such knowledge." At the time of Attorney Kilmartin's filings, the tribunal empowered to act upon a report of misconduct was the Professional Conduct Board, not the Superior Court. Generally, attorney discipline is the function of the Professional Conduct Board, although to the extent such conduct may affect the fairness of an ongoing case, motions seeking rulings on fair trial issues are appropriately addressed to the trial court. There is not necessarily any direct connection between violations of the Code of Conduct and litigation of the case. *See* In re Gadbois, 12 Vt.L.W. 275 (2001) (attorney disqualified, but no finding of violation of the Code); State v. Zele, 168 Vt. 154, 161 n.2 (1998) (violations of the Code have no direct bearing on the fairness of trial).

4

the confidential information from public view, since any pleading filed with the court becomes public upon service;[8] the reason for filing such a motion *ex parte* is not self-evident.

Taken together, these circumstances from the record show a *prima facie* case of bad faith or improper motive. No reason is apparent why another attorney under these circumstances would have perceived a necessity, or even a valid reason, for revealing the confidential material, since reasonable alternatives existed. A Motion to Disqualify could have been filed without attaching confidential material or could have been filed with a request to seal, and once the court sealed the first confidential material, subsequent pleadings could have included a request for a closed hearing or an opportunity to disclose confidential material under seal. Neither is it clear that the actions Attorney Kilmartin chose were ones designed to be effective in preventing or punishing unethical or criminal conduct, if that was the objective.

While these facts were before the court at the hearing on September 2, 1998, no factual determination was made at that time. Now that the Supreme Court has clarified the court's obligation to make one, rather than simply make a factual determination at this time on the basis of the record, the court will convene a further hearing to give Mr. Kilmartin an opportunity to show that under these facts and others he may wish to add, and including corrections he may wish to offer, his actions were objectively reasonably justifiable, and would have been chosen by another attorney under the same circumstances.

Attorney Kilmartin has claimed, as justification for his disclosures, that during the mediation

---

[8] The effect of filing *ex parte* is merely to prevent an opposing party from learning of the motion prior to court action because of prejudicial conduct that the court has determined will predictably be taken if notice of the motion is given in advance. See, e.g., V.R.C.P. Rules 4.1(b)(3) and 65(a). The facts do not show that Attorney Caldbeck or his clients would have taken prejudicial action if they had been given the usual notice about the motion.

5

session he was concerned that opposing counsel Gareth Caldbeck was making a demand that might violate standards of professional conduct, that he had a concern that Attorney Caldbeck might be counseling his client to engage in an act that violated the criminal law, and that he had a concern that Attorney Caldbeck was participating in such an act himself. These are the stated reasons upon which Attorney Kilmartin has explained why he revealed confidential material from the mediation session while settlement negotiations were ongoing. The Supreme Court noted that the trial court previously made no finding that Attorney Kilmartin did not make the filing for the purpose for which he stated he made it.

At the hearing, the court will be concerned with two issues. First, was there a valid basis for Attorney Kilmartin's stated concerns? Second, if so, was Attorney Kilmartin justified in pursuing the course he did, given the alternatives? Is his explanation plausible in light of the total pattern of conduct?

The purpose of this Entry Order is to define the legal framework for the remand hearing. This is based on preparatory legal research and analysis, including considerations raised in Attorney Bent's Memorandum filed October 22, 2001. It is provided so that Attorney Bent and his client will know, prior to the hearing, the court's understanding of the issues to be addressed pursuant to its obligation to make determinations of fact, and can adequately prepare for the hearing. No specific standards for determining "improper purpose" or "bad faith" have yet been adopted by the court, except that conduct must be evaluated based on an objective rather than a subjective standard. The court remains open to arguments on applicable standards and legal analysis that may be offered in a further memorandum of law or at oral argument. Within the framework identified herein, the hearing will provide an opportunity for Attorney Kilmartin to explain why his concerns about

6

Attorney Caldbeck's conduct were valid, and why they justify his conduct. The court does not intend to conduct a prosecutorial type proceeding, as was suggested in a prior motion filed on behalf of Attorney Kilmartin. This Entry Order is intended to lay the groundwork for presentation of relevant facts and legal arguments. The opportunity is available for both oral argument and the presentation of facts on behalf of Attorney Kilmartin within the scope of the identified framework.

The court has scheduled a one hour hearing. Attorney Bent shall notify the court clerk if he requests more time. In setting the date, the court has taken into consideration the expected termination date of the legislative session in view of Attorney Kilmartin's role as a legislator. Any further scheduling issues may be raised by motion.

Dated at White River Junction this _16th_ day of April, 2002.

_Mary Miles Teachout_
Hon. Mary Miles Teachout
Superior Court Judge